*75 OPINION AND ORDER
¶1 Barry Allan Beach petitions for a writ of habeas corpus, arguing that his sentence of one hundred years of imprisonment without the possibility of parole is unconstitutional under Miller v. Alabama, 567 U.S._, 132 S. Ct. 2455 (2012). The dispositive issue is whether Miller’s rule requiring a sentencing judge to consider a juvenile[1] offender’s age when sentencing that offender to life without parole applies retroactively on collateral review. We conclude that it does not. We deny Beach’s petition.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 In 1984, a Roosevelt County jury convicted Beach of deliberate homicide for a crime committed in 1979, when Beach was seventeen. Under Montana’s sentencing scheme, the District Court could impose a maximum sentence of one hundred years’ imprisonment without the possibility of parole. See §§ 45-5-102(2), 46-18-202(2), -222, -305, MCA (1978). On May 11, 1984, following its consideration of a written presentence investigation report and statements by both Beach and the prosecutor in open court, the District Court imposed the maximum sentence. Beach concedes that the sentence was within the discretion of the District Court and that the sentence was not mandated by law. The record does not show that the court expressly considered Beach’s youth when imposing the sentence.
¶3 In the years since, Beach repeatedly has attacked his conviction and sentence. See Beach v. McCormick, No. 98-35957, 1999 U.S. App. Lexis 20999 (9th Cir.), cert. denied 528 U.S. 1194, 120 S. Ct. 1255 (2000); State v. Beach, 2013 MT 130, 370 Mont. 163, 302 P.3d 47; Beach v. State, 2009 MT 398, 353 Mont. 411, 220 P.3d 667; Beach v. Day, 275 Mont. 370, 913 P.2d 622 (1996); State v. Beach, 217 Mont. 132, 705 P.2d 94 (1985). Beach now petitions for a writ of habeas corpus, *76 attacking the constitutionality of his sentence under the United States Supreme Court’s recent decision in Miller.
STANDARD OF REVIEW
¶4 This Court determines the retroactivity of a constitutional rule as a matter of law. State v. Reichmand, 2010 MT 228, ¶ 6, 358 Mont. 68, 243 P.3d 423.
DISCUSSION
I.
¶5 As an initial matter, the State urges that Beach’s habeas corpus petition is procedurally barred.
¶6 Article H, Section 19 of the Montana Constitution provides, “The privilege of the writ of habeas corpus shall never be suspended.” Under Montana’s statutory scheme for reviewing claims by convicted offenders, habeas corpus is not the method for collaterally reviewing the conviction or sentence of a person who has been adjudged guilty of a crime and has exhausted direct appeal. Section 46-22-101(2), MCA. Rather, a petition for postconviction relief is the method by which an offender who has been found guilty may collaterally attack his conviction or sentence. Section 46-21-101(1), MCA. Petitions for postconviction remedies carry strict limitations. See § 46-21-102, MCA. In Lott v. State, 2006 MT 279, 334 Mont. 270, 150 P.3d 337, we held that statutoxy limitations on the availability of the writ of habeas corpus are unconstitutional under Article II, Section 19 of the Montana Constitution as applied to an offender sentenced to a “facially invalid sentence” where the facial invalidity stems from a rule created after time limits for directly appealing or petitioning for postconviction relief have expired. Lott, ¶ 22.
¶7 The State argues that Lott does not apply because Beach’s sentence is not facially invalid. Beach counters that the recent United States Supreme Court decision in Miller makes his sentence facially invalid. Miller requires following a certain procedure before sentencing a juvenile to life without the possibility of parole. Miller, 567 U.S. at _, 132 S. Ct. at 2471. Beach is imprisoned under a sentence that he argues equates to life without parole. Because Miller was not announced until 2012, Beach could not have raised a claim under that case until after time limits for direct review and postconviction relief had run. In these circumstances, we are satisfied that Beach’s claim sufficiently calls into question the facial validity of his sentence to lift the statutory bar to a petition for habeas corpus relief.
*77 II.
¶8 The United States Constitution’s Eighth Amendment prohibits cruel and unusual punishment. “The concept of proportionality is central to the Eighth Amendment.” Graham v. Florida, 560 U.S. 48, 59, 130 S. Ct. 2011, 2021 (2010). While in practice the concept of proportionality does not affect most sentences, see generally, Ewing v. California, 538 U.S. 11, 123 S. Ct. 1179 (2003), proportionality bears on the harshest types of punishments when an Eighth Amendment challenge is raised.
¶9 Because of the concept of proportionality, the Eighth Amendment requires individualized sentencing in death penalty proceedings to determine whether that punishment corresponds to an offender’s character, circumstance, and crime. Lockett v. Ohio, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964-65 (1978); Woodson v. North Carolina, 428 U.S. 280, 303-05, 96 S. Ct. 2978, 2991-92 (1976). Further, the death penalty categorically represents an unconstitutionally disproportionate punishment when imposed for certain crimes (like non-homicide offenses, Kennedy v. Louisiana, 554 U.S. 407, 438, 128 S. Ct. 2641, 2660 (2008)), and on certain classes of offenders with lesser capacities (like intellectually disabled persons, Atkins v. Virginia, 536 U.S. 304, 321, 122 S. Ct. 2242, 2252 (2002), and juveniles, Roper v. Simmons, 543 U.S. 551, 575, 125 S. Ct. 1183, 1198 (2005)).
¶10 The Supreme Court recently made clear that a sentence of life imprisonment without the possibility of release, though not the harshest punishment for an adult offender, is subject to more exacting scrutiny when imposed on a juvenile. In Graham, the Supreme Court held that life without parole represents a categorically disproportionate sentence for a juvenile convicted of a non-homicide offense. Graham, 560 U.S. at 75, 130 S. Ct. at 2030. Next, in Miller, the Court considered the proportionality of life without parole imposed on a juvenile for a homicide offense. The Miller Court declined to address whether the Eighth Amendment categorically bars a life without parole sentence imposed on a juvenile convicted of homicide. Miller, 567 U.S. at_, 132 S. Ct. at 2469. The Court instead specified that appropriate circumstances to impose such a sentence are “uncommon.” Miller, 567 U.S. at_, 132 S. Ct. at 2469. To ensure that imposing life without parole on a juvenile homicide offender is proportional, the Eighth Amendment requires that, before imposing such a sentence, a sentencer “take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” Miller, 567 U.S. at_, 132 S. Ct. at 2469. Accordingly, the Eighth Amendment “forbids a sentencing scheme that mandates life *78 in prison without possibility of parole for juvenile offenders” because such a scheme prevents a sentencer from taking into account constitutionally necessary considerations. Miller, 567 U.S. at_, 132 S. Ct. at 2469.
¶11 Beach argues that his sentence equates to life without parole. Beach concedes thatMiiier’s holding forbidding mandatory life without parole sentences does not apply to his case because his sentence was not mandatory. Both at the time of Beach’s offense and now, Montana sentencing statutes have prescribed an individualized sentencing procedure that allows the sentencing court, after considering all circumstances of the offender and the offense, to fashion a sentence within the range provided by the statute under which the offender was convicted. See §§ 46-18-101, -201, MCA(1978); §§ 46-18-101, -201, MCA (2013). Nevertheless, Beach argues that his sentence is unconstitutional under Miller because his sentencer did not consider how Beach’s age counseled against his sentence.[2]
¶12 Beach’s conviction and sentence became final for purposes of direct review in 1985. Miller was announced in 2012. Beach may benefit from Miller only if Miller creates a rule that applies to a sentence imposed years before Miller was issued.
m.
A.
¶13 Beginning with Linkletter v. Walker, 381 U.S. 618, 85 S. Ct. 1731 (1965), the United States Supreme Court struggled for over two decades with how and when to apply constitutional rules retroactively in criminal cases. Justice Harlan was the most influential critic of the Court’s retroactivity approach during this period. In dissents in Mackey v. United States, 401 U.S. 667, 91S. Ct. 1160 (1971), and Desist v. United States, 394 U.S. 244, 89 S. Ct. 1030 (1969), Justice Harlan devised an alternative approach for determining retroactivity.
¶14 The distinction between direct and collateral review represents the central feature of Justice Harlan’s framework. Justice Harlan believed that the judicial function requires applying all rules of constitutional law to cases yet to be tried and on direct review. Mackey, *79 401 U.S. at 681.[3] But Justice Harlan also believed that new rules generally should not apply retroactively to offenders on collateral review because of the interest in finality that attaches once direct review ends, administrative costs associated with retrial years after the fact, and the historic functions of habeas corpus.[4] Mackey, 401 U.S. at 689-92. Justice Harlan conceived of two exceptions to the general rule of non-retroactivity on collateral review. The first exception is for new substantive rules that place “certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.” Mackey, 401 U.S. at 692. Justice Harlan reasoned that substantive rules lessen the interest in finality because “[t]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose.” Mackey, 401 U.S. at 693. Moreover, because conduct that is no longer punishable cannot be retried, overturning a conviction based on a substantive rule does not tax the state through requiring another trial. Substantive rules also echo the historic availability of habeas corpus to attack a court’s jurisdiction to imprison a person. Mackey, 401 U.S. at 692-93.
¶15 Justice Harlan’s second exception encapsulates procedural rules that are “implicit in the concept of ordered liberty” and “alter our understanding of the bedrock procedural elements” necessary to the fairness and accuracy of a conviction. Mackey, 401 U.S. at 693 (citation omitted); Desist, 394 U.S. at 262, 89 S. Ct. at 1041. Justice Harlan offered the rule from Gideon v. Wainwright, 372 U.S. 335, 345, 83 S. *80 Ct. 792, 806 (1963) (requiring that an indigent defendant be provided counsel), as an example of a rule satisfying this exception. Mackey, 401 U.S. at 694.
¶16 In Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708 (1987), the United States Supreme Court adopted the first leg of Justice Harlan’s framework, stating that any newly-announced constitutional rule will apply to cases still pending on direct review. Griffith, 479 U.S. at 328, 107 S. Ct. at 716. Then, in Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060 (1989), a plurality of the Court adopted the remainder of Justice Harlan’s framework, holding that new rules generally will not apply retroactively to cases on collateral review. Teague, 489 U.S. at 310, 109 S. Ct. at 1075. A rule is new when “not dictated by precedent existing at the time the ... conviction became final.” Teague, 489 U.S. at 301, 109 S. Ct. at 1070 (emphasis in original). Echoing Justice Harlan, after Teague, “[a] new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a watershed rul[e] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.” Wharton v. Bockting, 549 U.S. 406, 416, 127 S. Ct. 1173, 1180 (2007) (internal quotation marks and citations omitted).[5]
¶17 Although this framework originally focused on the retroactivity of rules used to attack convictions, the Supreme Court has refined the framework in cases attacking sentences. In Penry v. Lynaugh, 492 U.S. 302, 109 S. Ct. 2934 (1989), Penry argued on collateral review that the Eighth Amendment prohibits imposing the death penalty on an intellectually disabled person. Penry, 492 U.S. at 328, 109 S. Ct. at 2952. Before reaching the merits of that claim, the Court conducted the Teague retroactivity analysis. The Court noted that Justice Harlan’s description of a substantive rule — one that places “certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe” — is phrased in terms of “substantive categorical guarantees accorded by the Constitution, regardless of the procedures followed.” Penry, 492 U.S. at 329, 109 S. Ct. at 2952 (emphasis added). Because, in the context of sentencing, *81 rules that “deprivet ] the State of the power to impose a certain penally” or prohibit a “certain category of punishment for a class of defendants because of their status or offense” also are categorical guarantees, the Court determined that these types of sentencing rules are substantive. Penry, 492 U.S. at 329-30, 109 S. Ct. at 2952-53. The Court accordingly concluded that Penr/s claim called for a substantive rule not subject to the general rule of non-retroactivity. Penry, 492 U.S. at 330, 109 S. Ct. at 2953.
¶18 By contrast, the Court has held that sentencing rules that do not “prohibit the imposition of [a particular sentence] on a particular class of persons” are not substantive. Saffle v. Parks, 494 U.S. 484, 495, 110 S. Ct. 1257, 1263-64 (1990) (concluding that a prohibition against instructing a death penalty jury to avoid sympathy when determining punishment is not a substantive rule). See also Sawyer v. Smith, 497 U.S. 227, 242, 110 S. Ct. 2822, 2831 (1990) (concluding that the substantive rule exception “has no application” to a new rule prohibiting the imposition of capital punishment by a jury that has been led to believe that the ultimate decision to impose the death penalty rests elsewhere).
¶19 The United States Supreme Court further clarified the scope of the exceptions to the general rule of non-retroactivity for sentencing rules in Schriro v. Summerlin, 542 U.S. 348, 124 S. Ct. 2519 (2004). The offender in that case sought to benefit from the rule announced in Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428 (2002), requiring that a juiy rather than a judge find aggravating factors necessary to impose a death sentence. Schriro, 542 U.S. at 351, 122 S. Ct. at 2522. The Schriro Court stated, “A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes.... In contrast, rules that regulate only the manner of determining the defendant’s culpability are procedural.” Schriro, 542 U.S. at 353, 124 S. Ct. at 2523 (emphasis in original). Substantive sentencing rules that “place particular conduct or persons covered by the statute beyond the state’s power to punish” are retroactive because they “necessarily carry a significant risk” that the offender “faces a punishment that the law cannot impose upon him.” Schriro, 542 U.S. at 352, 124 S. Ct. at 2522-23 (internal quotation marks and citation omitted). The Court concluded that the Ring rule was not substantive because “the range of conduct punished by death ... was the same before Ring as after.” Schriro, 542 U.S. at 354, 124 S. Ct. at 2524.
¶20 The Court instead determined that the Ring rule was procedural because it “altered the range of permissible methods for determining whether a defendant’s conduct is punishable by death.” Schriro, 542 *82 U.S. at 353, 124 S. Ct. at 2523. The Court held that the Ring rule was not a watershed procedural rule, however, because it did not create an “impermissibly large risk” of inaccuracy. Schriro, 542 U.S. at 356, 124 S. Ct. at 2525 (citations omitted). The Schriro Court’s determination that the Ring rule was not watershed is consistent with its application of that exception. Since adopting Justice Harlan’s framework in 1989, the Supreme Court has never concluded that a new rule fits into the watershed procedural rule exception, and has stated that it is “unlikely” it ever will. Teague, 489 U.S. at 313, 109 S. Ct. at 1077. During that time, the Supreme Court has provided only one example of a rule that meets the watershed procedural rule exception — the rule announced in Gideon.
B.
¶21 The Montana Supreme Court has applied the federal retroactivity framework since State v. Egelhoff, 272 Mont. 114, 125-27, 900 P.2d 260, 267 (1995). For example, in State v. Whitehom, 2002 MT 54, 309 Mont. 63, 50 P.3d 121, we examined the retroactivity of the rule we announced in State v. Guillaume, 1999 MT 29, 293 Mont. 224, 975 P.2d 312.
¶22 Guillaume held that applying a weapons enhancement statute on top of an offense that already includes use of a weapon in the elements of the offense is unconstitutional under Montana’s double jeopardy clause. Guillaume, ¶ 16. In Whitehom, after surveying the federal retroactivity framework, we held that Guillaume was retroactive because it created a substantive rule: the rule prohibited imposition of a certain punishment (an additional punishment for use of a weapon) on a particular class of offenders (offenders who already had been punished for the same conduct). Whitehom, ¶¶ 36-42.
¶23 This Court’s Egelhoff decision appears to have assumed that the United States Constitution requires state courts to apply the federal retroactivity framework. See Egelhoff, 272 Mont. at 125, 900 P.2d at 267 (“With regard to the question of retroactivity, the United States Supreme Court has additionally made its position more clear and we find this also to be binding upon us.”). In Danforth v. Minnesota, 552 U.S. 264, 128 S. Ct. 1029 (2008), the United States Supreme Court clarified that its retroactivity analysis need not be followed by state courts. Danforth, 552 U.S. at 280-81, 128 S. Ct. at 1041. Danforth noted that Egelhoff placed this Court among three state high courts that incorrectly concluded that states must apply the federal retroactivity framework. Danforth, 552 U.S. at 281 n.17, 128 S. Ct. at 1042 n.17. Nonetheless, we have continued to apply the federal framework in the years since Danforth. In Reichmatid, 2010 MT 228, *83 358 Mont. 68, 243 P.3d 423, we recognized this Court’s “right to craft its own unique retroactivity jurisprudence, using federal requirements as a floor,” before employing the Griffith principle that rules are retroactive on direct review to address a claim under a state constitutional right.[6] Reichmand, ¶¶ 13-15. Just recently, in State v. Cook, 2012 MT 34, 364 Mont. 161, 272 P.3d 50, we recognized the distinction between substantive and procedural rules for purposes of determining retroactivity on collateral review. Cook, ¶ 17. We applied the federal framework to determine that the rule the petitioner invoked was not retroactive because, although it was new and procedural, it was not watershed. Cook, ¶¶ 17-19.
¶24 Against this backdrop of faithful application, Beach has not made a principled argument for departing from the United States Supreme Court’s retroactivity framework to resolve his petition. In both his briefs and in oral argument, Beach focused on showing that Miller is retroactive under the federal retroactivity framework. Beach’s briefing on applying a state-specific retroactivity standard is scant, and his oral argument raised the possibility of a different standard only briefly, in rebuttal to the State’s argument. In neither his briefs nor in oral argument did Beach specify what standard we should apply if not the retroactivity standard we have applied in previous cases.
¶25 In the limited argument Beach has developed on departing from the retroactivity framework, he has suggested that Miller should be applied retroactively to his case because Miller implicates fundamental rights found in Article II, Sections 15 and 22 of the Montana Constitution. Beach also recounts Whitehom’s comment that “it is illogical for this Court to refuse to extend constitutional protections to citizens simply because their claims are raised by collateral review rather than hy way of direct appeal.” Whitehom, ¶ 42. He fails to note, however, the very next line in that opinion: “Accordingly, we conclude that ... this Court erred in failing to recognize and apply the foregoing case law that distinguishes a procedural rule from a substantive rule when addressing retroactivity” *84 Whitehorn, ¶ 42 (emphasis added). In Whitehorn, we applied the federal retroactivity framework, recognizing the illogic of not applying substantive rules retroactively when that would permit “the criminal process to rest at a point where it ought properly never to repose.” Mackey, 401 U.S. at 693 (Harlan, J., dissenting).
¶26 Beach has failed to explain why the cited provisions of the Montana Constitution require a different retroactivity model for Miller. See State v. Covington, 2012 MT 31, ¶ 21, 364 Mont. 118, 272 P.3d 43. Beach has further failed to address why Miller requires retroactive application in light of the interests that collateral review affects and the purposes that it serves. We are not obligated to develop legal analysis that may lend support to an appellant’s arguments. In re Estate of Bayers, 1999 MT 154, ¶ 19, 295 Mont. 89, 983 P.2d 339 (1999).
¶27 Two of today’s dissenting opinions develop their own legal analyses, each proffering a new path for determining retroactivity not advanced by Beach. Justice Wheat offers an ad hoc approach, suggesting that the Court simply compare the interests of fairness and finality to determine the retroactivity of the rule invoked in this case. Dissent, ¶ 60. But his Dissent does not offer a measure by which to compare these interests. Nor does it acknowledge the aspects of fairness that the interest in finality subsumes — stability in the law, timely resolution of disputes, and closure for everyone involved in a case, including victims. Dissent, ¶¶ 63-65; see Mackey, 401 U.S. at 691 (Harlan, J., dissenting) (“No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved.”). The logical conclusion of Justice Wheat’s approach is that a conviction would never be final in this state until a reviewing court deems it “fair” to so declare.
¶28 Meanwhile, Justice Shea would embark on a novel state-specific approach to retroactivity by overruling several prior decisions of this Court. He posits that those decisions perpetuated Egelhoffs mistaken assumption that we are bound to apply the federal retroactivity framework. Dissent, ¶ 97. Justice Shea faults the Court’s analysis in Reichmand, but overlooks our express, and correct, observation in that case that Danforth permits this Court to adopt any retroactivity standard with regard to state constitutional rights. Reichmand, ¶ 13. In Reichmand, we examined the retroactivity of a new rule affecting a state constitutional right. Reichmand, ¶ 2. After acknowledging our ability to choose any standard, we applied the federal retroactivity *85 framework to that state right. Reichmand, ¶ 15. We did likewise in Cook, where we reaffirmed that “[Retroactive application is needed in situations that ‘necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal’ or faces a punishment that the law cannot impose upon him.” Cook, ¶ 17 (quoting Schriro, 542 U.S. at 351, 124 S. Ct. at 2522-23). It cannot be said that the Court did not “voluntarily” make the federal retroactivity framework its own in these two cases. Dissent, ¶ 100.[7]
¶29 Most importantly, Justices Wheat and Shea’s respective theories could have been, but were not, argued by Beach. As a result, this Court has not had the benefit of the State’s position on the approaches that Justices Wheat and Shea would have us adopt. Under this Court’s policy of stare decisis, we keep faith with precedent “unless it is demonstrably made to appear that” our precedent “manifestly is wrong.” State ex rel. Perry v. Dist. Ct., 145 Mont. 287, 310, 400 P.2d 648, 660 (1965) (citation omitted). The burden of this demonstration is on the party seeking to overturn the precedent. See In re McCabe, 168 Mont. 334, 337, 544 P.2d 825, 827 (1975) (notingthe petitioner’s failure to “demonstrate any sufficient reason for this Court to overturn” its prior construction); see also U.S. v. Infl Bus. Mach. Corp., 517 U.S. 843, 856, 116 S. Ct. 1793, 1801 (1996) (“Though from time to time we have overruled governing decisions that are unworkable or are badly reasoned, we have rarely done so on grounds not advanced by the parties.”) (internal citations and quotations omitted). Beach has not met his burden to so demonstrate, and it would be unwise for this Court to depart from long-settled precedent to apply an analysis that has not been developed or tested by the parties to the case. The Court accordingly will apply the same retroactivity framework in this case that it has applied to every previous collateral review case since Teague was decided.
IV.
A.
¶30 Before getting to the retroactivity of the rule Beach invokes, we must first establish that he, in fact, invokes a new rule. Beach argues *86 that, under Miller, a sentencer must consider a juvenile’s youth before sentencing that juvenile to life without parole. The State responds that Miller does not establish this rule. Instead, the State argues, Miller merely bars the mandatory imposition of a life without parole sentence on a juvenile. The State suggests that Miller's language about required sentencing considerations is dicta.
¶31 Dictum is “[a]n opinion by a court... that is not essential to the decision and therefore not binding even if it may later be accorded some weight.” Black’s Law Dictionary 549 (Bryan A. Gamer ed., 10th ed. 2009). Miller's statements about required sentencing considerations are not dicta. The Miller Court held that mandatory imposition of a life sentence is unconstitutional because a mandatory scheme prevents a sentencer from considering how a juvenile’s youth affects the proportionality of that sentence, and the Eighth Amendment requires a sentencer to so consider. The Supreme Court could not have been clearer when it said, “Although we do not foreclose a sentencer’s ability to [impose life without parole] in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” Miller, 567 U.S. at_, 132 S. Ct. at 2469.
¶32 We think it clear that Miller establishes two rules. First, sentencing schemes that mandate life incarceration without the possibility of parole for juvenile offenders are unconstitutional. Miller, 567 U.S. at_, 132 S. Ct. at 2469. Second, a sentencer must “follow a certain process” before imposing a life without parole sentence on a juvenile. Miller, 567 U.S. at_, 132 S. Ct. at 2471. Beach invokes the second rule.
¶33 Under the retroactivity framework, new rules are treated differently from old rules. See Penry, 492 U.S. at 319, 109 S. Ct. at 2947. An offender on collateral review generally cannot benefit from a new rule, whereas she can benefit from an old rule. Teague, 489 U.S. at 310, 109 S. Ct. at 1075. A rule is new unless dictated by precedent existing at the time the offender’s conviction became final. Teague, 489 U.S. at 301, 109 S. Ct. at 1070.
¶34 Beach has omitted argument on this point, seemingly conceding the novelty of Miller's sentencing consideration rule. Indeed, Miller rests on the twin recognitions that (1) children are different for sentencing purposes, and (2) life sentences without the possibility of parole are similar to death sentences when imposed on juveniles. See Miller, 567 U.S. at_, 132 S. Ct. at 2463-66. The Supreme Court did not frilly recognize these principles until Roper in 2005 and Graham in 2010. Beach’s conviction became final in 1985. *87 Although the case law existing in 1985 may have foreshadowed Miller'a sentencing consideration rule, see Eddings v. Oklahoma, 455 U.S. 104, 115, 102 S. Ct. 869, 877 (1982), these cases certainly did not dictate or compel such a rule. We conclude that Miller's sentencing consideration rule is a new rule, subject to the general rule of nonretroactivity on collateral review.
B.
¶35 A new rule is not retroactive on collateral review unless it is a substantive rule or a watershed procedural rule. Teague, 489 U.S. at 310-11, 109 S. Ct. at 1075-76. Since 2012, many state and lower federal courts have wrestled with Miller’s retroactivity. These courts appear to agree that Miller creates a new rule subject to the general rule of non-retroactivity. See, e.g., In re Morgan, 713 F.3d 1365, 1366-67 (11th Cir. 2013); Diatchenko v. Dist. Atty. for Suffolk Dist., 466 Mass. 655, 667 (2013). The courts diverge, however, on whether Miller fits into one of the exceptions to the general rule. Courts that have held Miller retroactive generally conceive of Miller as creating a substantive rule. See, e.g., Illinois v. Davis, 6 N.E.3d 709, 722 (Ill. 2014); Iowa v. Ragland, 836 N.W.2d 107, 117 (Iowa 2013). By contrast, courts that have held Miller non-retroactive generally conceive of Miller as creating a procedural rule, but not a watershed procedural rule. See, e.g., Michigan v. Carp 496 Mich. 440, 495 (2014); Pennsylvania v. Cunningham, 81 A.3d 1, 26-29 (Pa. 2013).
¶36 Most of these courts have been concerned with whether Miller's prohibition on mandatory life without parole sentences is retroactive.[8] See, e.g., Davis, 6 N.E.3d at 723; Carp, 496 Mich. at 483 n.13. But see Aiken v. Byars, 410 S.C. 534, 543-44 (2014). Because Miller's mandatory sentencing rule has no application in Montana, the ensuing analysis does not concern — at least directly — the retroactivity of that rule. We focus instead on the retroactivity of Miller's rule requiring consideration of a juvenile offender’s youth before imposing a life without parole sentence.
¶37 Beach includes only one sentence in his brief suggesting that Miller’s sentencing consideration rule may represent a watershed procedural rule. Beach instead has focused his retroactivity argument on showing that the Miller rule is substantive. The strategy makes sense considering that the United States Supreme Court effectively *88 has interpreted the watershed procedural rule exception asa “null set.” R. Fallon, J. Manning, D. Meltzer, & D. Shapiro, Hart and Wechsler’s The Federal Courts and the Federal System 1246 (6th ed. 2009); see also Sepulveda v. United States, 330 F.3d 55, 61 (1st Cir. 2003) (watershed procedural rules under the federal retroactivity framework are “hen’s-teeth rare”). The Supreme Court continuously has equated the watershed procedural rule exception with Gideon and Gideon alone. In this context, we cannot say that Miller*3 rule is a watershed procedural rule. Montana always has permitted a sentencer to consider a juvenile offender’s youth when sentencing that offender to a term of years with no possibility of parole. Miller’s rule merely goes a step further by requiring that consideration. The rule’s effect on the fairness and accuracy of a criminal proceeding is not on par with Gideon. Accordingly, Miller*s sentencing consideration rule is not a watershed procedural rule.
¶38 Justice Cotter agrees with Beach that Miller announced a new substantive rule. Dissent, ¶ 115. A substantive sentencing rule is a rule that “prohibits] a certain category of punishment for a class of defendants because of their status or offense.” Penry, 492 U.S. at 330, 109 S. Ct. at 2953. In other words, a substantive sentencing rule is a “categorical guarantee]] accorded by the Constitution, regardless of the procedures followed,” Penry, 492 U.S. at 329, 109 S. Ct. at 2952, that “placets] particular conduct or persons covered by the statute beyond the state’s power” to subject to a particular punishment, Schriro, 542 U.S. at 352, 124 S. Ct. at 2522-23. In Miller, the Supreme Court specifically stated that it did “not categorically bar a penalty for a class of offenders or type of crime,” and instead mandated “only that a sentencer follow a certain process ... before imposing” life without parole on a juvenile. Miller, 367 U.S. at_, 132 S. Ct. at 2471 (emphases added). Miller did not hold that juvenile life without parole sentences are categorically unconstitutional. Miller, 367 U.S. at_, 132 S. Ct. at 2469. Miller “dictated what process must take place before a life-without parole sentence could be imposed, [but] it did not prohibit a state from imposing that penalty on a certain class of offenders.” 7 W. Lafave, J. Israel, N. King, & O. Kerr, Criminal Procedure § 28.6(e) (3rd ed. 2007,2014-2015 supplement).
¶39 Beach’s own summary of Miller defeats his suggestion that Miller is substantive. “Miller,” he explains, “prohibits a particular punishment (life-without-parole) for a class of defendants (juveniles) unless specific youth related factors are first considered.” (Emphasis added.) In other words, under Miller, a sentencing court retains the constitutional authority to sentence a juvenile to life without parole. If *89 Beach’s case were remanded for sentencing, a sentencing judge, upon following Miller’s sentencing consideration rule, could resentence Beach to the exact same sentence he received before. This differs from a substantive rule. For instance, regardless of the procedures followed, a sentencer after Graham could not resentence a juvenile non-homicide offender to life without parole; a sentencer after Roper could not resentence a juvenile to the death penalty; a sentencer after Atkins could not resentence an intellectually disabled offender to the death penalty; and a sentencer after Kennedy could not resentence a non-homicide offender to the death penalty. Because Millers sentencing consideration rule “regulates only the manner of determining” a sentence by requiring a certain process, and does not alter the range of punishment that Beach could receive, Schriro, 542 U.S. at 353, 124 S. Ct. at 2523, it is procedural and not substantive.[9]
¶40 Beach seeks to forestall this conclusion by reframing the required considerations under Miller as “elements” of a life without parole sentence imposed on a juvenile. The case on which Justice Cotter relies, Dissent ¶¶ 118-20, sounds a similar theme. See In re Willover, No. HO40757,2015 Cal. App. LEXIS 322, *20-21 (stating that Miller created “a rule that sets forth the specific considerations to be made during a sentencing decision” of a juvenile homicide offender). An element is a certain fact that is essential to an offense or punishment. See Alleyne v. United States, 570 U.S._,_, 133 S. Ct. 2151, 2155 (2013). By its terms, Miller requires only that a sentencer consider certain factors; it does not make the finding of “certain fact[s] essential” to a life without parole sentence. Schriro, 542 U.S. at 354, 124 S. Ct. at 2524.
¶41 The logical conclusion to Beach’s elements argument is that any new rule that conditions the imposition of a particular sentence on a particular procedure would be considered substantive. But that does not comport with cases holding such rules to be procedural only. See Beard v. Banks, 542 U.S. 406, 420, 124 S. Ct. 2504, 2515 (2006) (finding non-retroactive a rule prohibiting imposition of the death penalty by jury unless the jury can consider all mitigating factors); Schriro, 542 U.S. at 354, 124 S. Ct. at 2524 (concluding that a rule prohibiting imposition of the death penalty unless elements of that sentence are found by a jury is procedural and not substantive); Sawyer v. Smith , 497 U.S. at 242, 110 S. Ct. at 2831 (finding non- *90 substantive a rule that prohibits the imposition of the death penalty by a sentencer under the mistaken belief that responsibility for determining the propriety of the death penalty rests elsewhere). In all of these cases, just as in Beach’s case, the examined rules did not “prohibit!! ] a certain category of punishment for a class of defendants because of their status or offense,” Penry, 492 U.S. at 330, 109 S. Ct. at 2953 — the rules instead prohibited a certain category of punishment unless the sentencer followed a prescribed process. This demonstrates a significant difference from the Willover case. The court in Willover determined that, “Because petitioner was sentenced at a time when the prevailing case law required a presumption of [life without parole], there is a ‘significant risk’ that petitioner Taces a punishment that the law cannot impose upon him.’ ” In re Willover, 2015 Cal. App. LEXIS 322 at *21. No such presumption existed in Montana law at the time Beach was sentenced.
¶42 Finally, if the Miller considerations are elements of a life without parole sentence, Beach does not explain how his proposed solution to the constitutional infirmity of his sentence — resentencing by a judge who must consider these elements — is any more constitutional than his original sentence, considering that all elements necessary to raise the maximum allowable sentence for a crime must be found by a jury, not by a judge. See Apprendi v. New Jersey, 530 U.S. 466, 476, 120 S. Ct. 2348, 2355(2000).
C.
¶43 Beach makes three more arguments, all of which may bear on the Miller rule’s retroactivity in general, but do not bear directly on whether the Miller rule fits into one of the retroactivity framework’s exceptions.
¶44 First, Beach notes that the companion case in Miller was Jackson v. Hobbs, an appeal by a prisoner on collateral review. Because Jackson benefitted from Miller, and Beach is similarly situated to Jackson on collateral review, Beach argues that fairness dictates that he too should benefit from Miller*a rule.
¶45 Retroactivity, however, is an affirmative defense to be raised by the government. “[A] federal court may, but need not, decline to apply [the retroactivity framework] if the [s]tate does not argue it.” Caspari v. Bohlen, 510 U.S. 383, 389, 114 S. Ct. 948, 953 (1994). Arkansas (the state responding to Jackson’s petition for habeas corpus) did not argue to the Supreme Court that the rule Jackson sought was non- *91 retroactive.[10] Given this omission, the Supreme Court did not examine or decide the retroactivity of the Miller rule. Arkansas’s waiver of its retroactivity defense in Jackson’s appeal does not mean that the Supreme Court determined that Miller is retroactive.
¶46 Second, Beach argues that Miller is retroactive because the cases upon which it relies are retroactive. Beach is correct that Roper and Graham are retroactive as substantive rules. See, e.g., In re Sparks, 658 F.3d 257, 262 (5th Cir. 2011) (concluding that Graham is substantive and retroactive); Little v. Dretke, 407 F. Supp. 2d 819, 823-24 (W.D. Tex. 2005) (concluding that Roper is substantive and retroactive). Roper and Graham are similar to Kennedy and Atkins in that they “categorically bar a penalty for a class of offenders or type of crime.” Miller, 367 U.S. at_, 132 S. Ct. at 2471. But Miller explicitly disclaimed creating a categorical bar to a type of punishment. Miller, 367 U.S. at_, 132 S. Ct. at 2471. In its effect, Miller more closely resembles two of the other cases upon which it relied — Woodson and Lockett, which invalidated mandatory death penalty sentences and required individualized sentencing. Lockett, 438 U.S. at 604,98 S. Ct. at 2964-65; Woodson, 428 U.S. at 303-05,96 S. Ct. at 2991-92. Beach has not identified any cases holding that Woodson and Lockett qualify as retroactive under the current retroactivity framework.[11]
¶47 Third, Beach argues that it would be unjust to permit offenders on direct review to benefit from Miller but not to afford the same benefit to offenders on collateral review. In a case Beach cited as supplemental authority, and quoted in oral argument, the California Court of Appeal for the Second Judicial District made a similar point:
We find particularly troubling the apparent inequity that would arise if the prospect of an individualized, discretionaiy judicial *92 determination of whether a juvenile murderer should be afforded parole eligibility would depend solely upon the happenstance of the precise moment that the defendant’s conviction became final. No court that has rejected the retroactive application ofMi/Zer has advanced a rationale to resolve this inequity.
In re Wilson, 233 Cal. App. 4th 544, 567 (2015). With this argument, the California court and Beach fail to recognize two things. First, Miller’s non-retroactivity is no more inequitable than the nonretroactivity of the rules in Beard, Schriro, or Sawyer, all of which similarly involved procedures meant to ensure the accuracy of sentences, yet involved the harshest of punishments — the death penalty. Second, the concept of equity between offenders on direct and collateral review does not stand in a vacuum. For instance, Justice Wheat’s protest that it is unfair to not apply Miller by virtue of the “mere[]” timing of Beach’s conviction, Dissent, ¶ 73, ignores the unfairness of re-opening this case after a “mere” thirty years have passed without closure for the victim’s family. The law strikes a balance between the interests of equity among offenders and finality of convictions. That balance is embodied in the principles of retroactivity that we have applied in our prior cases and that we apply again today.
CONCLUSION
¶48 Because the Miller sentencing consideration rule is new and is neither a substantive rule nor a watershed procedural rule, we conclude that it is not retroactive to Beach’s claim on collateral review. Retroactivity is a threshold issue, Teague, 489 U.S. at 300, 109 S. Ct. at 1070, and Beach does not pass the threshold. Accordingly, we do not reach the merits in this case.
ORDER
¶49 The petition for writ of habeas corpus is denied.
DATED this 5th day of May, 2015.
JUSTICE RICE and DISTRICT JUDGE WHEELIS, sitting for CHIEF JUSTICE McGRATH concur.

 In this opinion, juvenile" refers to a person who committed a crime when under the age of eighteen.

 In this opinion, we assume without deciding that Beach was sentenced to the equivalent of life without parole.

 Justice Harlan’s dissent in Mackey was never printed in the Supreme Court Reporter. We cite only to where it appears in the United States Reports.

 In Montana, direct review occurs when an offender is convicted by a state court and, in the months following that conviction, appeals her decision to the Montana Supreme Court and (if federal issues are involved) seeks appeal with the United States Supreme Court. Under Justice Harlan’s framework, a rule announced by the United States Supreme Court will benefit an offender while her claim is still pending on direct review. After an offender exhausts direct review, her claim becomes final, and she thereafter may seek only collateral review. Collateral review has two stages. In the first stage, the offender may petition Montana courts, including this Court, for collateral review (usually styled as a petition for postconviction relief, but sometimes, as in this case, styled as a petition for a writ of habeas corpus), and may appeal this Court’s decision on federal issues to the United States Supreme Court. In the second collateral review stage, the offender may seek federal habeas corpus review on federal issues from a federal district court, a federal court of appeals, and the United States Supreme Court. Under Justice Harlan’s framework, a new rule announced after an offender’s conviction has become final — when only collateral review remains — generally will not apply retroactively to benefit an offender.

 We recognize that courts (including this Court and the United States Supreme Court) have struggled with whether a substantive rule is an exception to the general rule of non-retroactivity, or whether the general rule of non-retroactivity simply does not apply to substantive rules. See Schriro v. Summerlin, 542 U.S. 348, 351 n.4, 124 S. Ct. 2519, 2523 n.4 (2004); State v. Whitehorn, 2002 MT 54, ¶ 37, 309 Mont. 63, 43 P.3d 922 (2002). We think this a distinction without significance. In this opinion, we refer to substantive rules as exceptions to the general rule of non-retroactivity.

 Reichmand also suggested that “the U.S. Supreme Court’s retroactivity analysis for federal constitutional errors is binding upon the states when federal constitutional errors are involved.” Reichmand, ¶ 13 (emphasis in original). This statement is correct to the extent that it means that the federal doctrine effectively sets the floor for the retroactivity of federal rights in Montana. But this statement should not be taken to mean that this Court cannot provide greater retroactivity to federal rights than permitted under the federal standard — under Danforth, we are not required to employ the federal retroactivity analysis for either federal or state rights.

 The Dissent’B reference to State v. Maine, 2011 MT 90, 360 Mont. 182, 255 P.3d 64, does not bolster its analysis. Our decision in Maine was supported by precedent going back decades. Maine, ¶ 45 (Baker, J., concurring). In this case, our precedent, reaffirmed most recently in Reichmand and Cook, dictates a result in conflict with what Justice Shea proposes. In addition, Maine addressed arguments squarely presented and briefed by the parties. Maine, ¶ 27.

 It stands to reason that jurisdictions that at one time mandated juvenile life without parole sentences have more offenders who stand to benefit from Miller and to litigate its retroactivity.

 Justice Wheat’s Dissent appears to agree, Dissent, ¶ 54, and Justice Shea’s Dissent does not appear to take issue with this analysis.

 See Brief for Respondent, Jackson v. Hobbs, http://perma.cc/7bz4-vfyc (U.S. 2012) (No. 10-9647).

 Beach cites Sumner v. Shuman, 483 U.S. 66, 72, 107 S. Ct. 2716, 2727 (1987) (invalidating a statute mandating a death sentence for a prisoner who kills someone while serving a life sentence), as an example of an instance when Woodson and Lockett were applied retroactively on collateral review. But Sumner does not address retroactivity under the current framework; indeed, Sumner does not appear to address a retroactivity argument at all. Moreover, Woodson was announced before Sumner’s conviction became final, meaning Woodson was not applied retroactively in Sumner. Beach also cites Campbell v. Blodgett, 978 F.2d 1502 (9th Cir. 1992), Thigpen v. Thigpen, 926 F.2d 1003 (11th Cir. 1991), and McDougall v. Dixon, 921 F.2d 518 (4th Cir. 1990), to show Sumner’s retroactive application, but none of these cases appear to address Sumner’s retroactivity.