ROWE, J.
Raymond Louis Smith, appeals his aggregate eighty-year sentence, asserting that the sentence is the functional equivalent of a life sentence without parole and thus violates the constitutional prohibition against cruel and unusual punishment in light of Graham v. Florida, — U.S. —, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). For the reasons that follow, we affirm.
Smith was convicted in two separate cases for the following eight offenses: two counts of sexual battery, two counts of burglary, one count of aggravated assault, one count of kidnapping, one count of possession of a weapon during the commission of a felony, and one count of possession of burglary tools. The offenses were committed between December 4, 1985, and December 6, 1985, when Smith was seventeen years old.
On April 22, 1986, after pleading nolo contendere, Smith was sentenced to five life sentences without the possibility of parole on the sexual battery, kidnapping, and burglary counts (some running consecutively, others concurrent), as well as three five-year sentences on the aggravated assault, possession of a firearm, and possession of burglary tools counts.
On March 23, 2011, following the Supreme Court of the United States’ decision in Graham, the state filed a motion to correct illegal sentence because Smith had received multiple life sentences for non-homicide offenses committed when he was seventeen years old. After conducting a hearing, the trial court granted the state’s motion and entered an order resentencing Smith (only as to the five counts for which Smith received life sentences) to concurrent forty-year sentences on four of the counts, and another forty-year sentence on the remaining count, to be served consecutively to the other forty-year sentences. Thus, Smith was sentenced to an aggregate of eighty years in prison.
*373 ANALYSIS
Smith asserts that his sentence is the functional equivalent of a sentence of life without the possibility of parole in that it does not provide him with a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation, and therefore, the sentence violates the prohibition against cruel and unusual punishment under Graham.
In Graham, the Supreme Court of the United States held that a sentence of life without parole for a juvenile offender who commits a non-homicide offense violates the Eighth Amendment. Id. at 2030. The Court concluded that while the state is not required to guarantee the juvenile eventual freedom, it must provide the juvenile some meaningful opportunity to obtain release if the juvenile demonstrates maturity and rehabilitation:
A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does forbid States from making the judgment at the outset that those offenders never will be fit to reenter society.

Id.

This court has on three occasions considered whether a term-of-years sentence is the functional equivalent of life sentence. First, in Thomas v. State, 78 So.3d 644 (Fla. 1st DCA 2011), we held that a fifty-year sentence was not unconstitutional pursuant to Graham, observing that Graham “specifically limited its holding to only ‘those juvenile offenders sentenced to life without parole solely for a non-homicide offense.’ ” Id. at 646 (quoting Graham, 130 S.Ct. at 2023). We acknowledged, however, “that at some point, a term-of-years sentence may become the functional equivalent of a life sentence.” Id. We concluded that the fifty-year sentence imposed on Thomas was not the functional equivalent of life imprisonment without the possibility of parole because Thomas would be in his late sixties when he was released from prison if he served the entirety of his sentence. Id.
Next, in Gridine v. State, 89 So.3d 909 (Fla. 1st DCA 2011), we determined that a seventy-year sentence was not the “functional equivalent” of a life sentence without the possibility of parole. Id. at 910.
Most recently, in Floyd v. State, 87 So.3d 45 (Fla. 1st DCA 2012), we held for the first time that a lengthy term-of-years sentence was the functional equivalent of a life sentence without parole, and thus prohibited as cruel and unusual punishment under the authority of Graham. Id. at 45. But see Henry v. State, 82 So.3d 1084, 1089 (Fla. 5th DCA 2012) (concluding that a ninety-year aggregate term-of-years sentence was not the functional equivalent of life sentence under Graham). We observed that if Floyd served the entirety of his combined eighty-year sentence, he would be ninety-seven when he was re *374 leased. Id. at 46. In addition, because Floyd committed his offenses in 1998, he was required to serve at least eighty-five percent of his sentence. Id. Therefore, even if Floyd “received the maximum amount of gain time, the earliest he would be released is at age eighty-five.” Id. Based on these facts, we concluded that “[t]his situation does not in any way provide [Floyd] with a meaningful or realistic opportunity to obtain release, as required by Graham.” Id.
In this case, we consider whether the sentence Smith received is the functional equivalent of a life sentence without parole and whether the sentence affords Smith with a meaningful opportunity to obtain release. Graham, 130 S.Ct. at 2030. Like the defendant in Floyd, Smith has been sentenced to an aggregate eighty-year term-of-years sentence. However, this case is distinguishable from Floyd because the sentence imposed on Smith provides him with a meaningful opportunity to obtain release by virtue of the significant gain time available to Smith under the applicable statutes.
Because Smith’s sentence was rendered in 1985, unlike the defendant in Floyd, Smith is not required to serve eighty-five percent of his sentence. Instead, the 1985 gain-time statutes apply. In re Commitment of Phillips, 69 So.3d 951, 956 n. 6 (Fla. 2d DCA 2010) (“A prisoner’s ability to earn gain time is based on the statutes in effect at the time of the offense. See Weaver v. Graham, 450 U.S. 24, 33, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (holding that the ex post facto clause applied to changes in gain time statutes).”). Under the 1985 statutes, Smith has the opportunity to earn significant amounts of gain time to dramatically reduce his total sentence served. Section 944.275(4)(a), Florida Statutes (1985), provides that “[a]s a means of encouraging satisfactory behavior, the department shall grant basic gain-time at the rate of 10 days for each month of each sentence imposed.” § 944.275(4)(a), Fla. Stat. (1985) (emphasis added). Applying only the basic gain-time statute to Smith’s eighty-year sentence, assuming no forfeiture of the basic gain time he is entitled to under the statute, Smith would serve a sentence of roughly sixty-three years, making him eligible for release when he is eighty-one years old.
However, in addition to basic gain time, Smith was also eligible to earn twenty days per month in incentive gain time for good behavior. Section 944.275(4)(b), Florida Statutes (1985), provides that “[f]or each month in which a prisoner works diligently, participates in training, uses time constructively, or otherwise engages in positive activities, the department may grant up to 20 days of incentive gain-time, which shall be credited and applied monthly.” § 944.275(4)(b), Fla. Stat. (1985). Considering both the basic and incentive gain time available to him, and assuming no forfeiture of gain time earned, it is evident that Smith was eligible to serve a sentence significantly less than the sixty-three years he would serve if only basic gain time were applied.[1] Because of the *375 gain time available to him, we conclude that Smith has been afforded the requisite “meaningful opportunity to obtain release based upon demonstrated maturity and rehabilitation” mandated by Graham. Accordingly, Smith’s sentences are affirmed.
AFFIRMED.
MARSTILLER, J., concurs; PADOVANO, J., concurring with opinion.

. In the answer brief, the state references records of the Department of Corrections reporting Smith’s prospective release date of May 25, 2032 (reducing Smith’s total projected time served to 46 years) and demonstrating that Smith has forfeited a total 2290 days of gain time while serving his sentence. Because these matters are outside the record, they may not be considered by this court. See, e.g., Stewart v. State, 459 So.2d 426, 428 n. 3 (Fla. 1st DCA 1984) ("It would be patently improper for this court to consider evidence which was not introduced for consideration in the lower court proceeding.”). However, we note that the procedural posture of this case presents an interesting question regarding the proper method for the state to introduce the current status of the *375 defendant’s sentence where defense counsel preserves the argument of "functional equivalency” under Graham through a contemporaneous objection at sentencing rather than by means of a Rule 3.800(b) motion. See Fla. R.App. P. 9.140(e) ("A sentencing error may not be raised on appeal unless the alleged error has first been brought to the attention of the lower tribunal: (1) at the time of sentencing; or (2) by motion pursuant to Florida Rule of Criminal Procedure 3.800(b).”); Jackson v. State, 983 So.2d 562, 569 (Fla.2008).