NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4169-11T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RICKY ZUBER,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

October 30, 2015

APPELLATE DIVISION

Argued December 1, 2014 — Decided October 30, 2015

Before Judges Sabatino, Guadagno and Leone.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 81-00-03729 and 81-00-03730.[1]

Mark P. Stalford, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Mr. Stalford, on the brief).

Andrew R. Burroughs, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Carolyn A. Murray, Acting Essex County Prosecutor, attorney; Mr. Burroughs, on the brief).

Appellant filed a pro se supplemental brief.

_____

[1] Indictment No. 81-00-03730 was consolidated with Indictment No. 81-00-02663, which is not at issue in this appeal.

The opinion of the court was delivered by

LEONE, J.A.D.

Defendant Ricky Zuber was born on April 14, 1964. He committed two separate gang rapes in November and December of 1981, when he was nearly eighteen years old. He is currently serving consecutive sentences for numerous offenses arising out of these two criminal episodes. Those sentences total 110 years in prison with fifty-five years of parole ineligibility.

Defendant now claims that his sentences are illegal under the recent United States Supreme Court decision in Graham v. Florida, 560 U.S. 48, 74, 130 S. Ct. 2011, 2030, 176 L. Ed. 2d 825, 845 (2010), which held that "for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole."

We hold that Graham applies retroactively to sentences previously imposed. To apply Graham to defendant's sentences, Graham would have to be extended to cover terms-of-year sentences, aggregated from consecutive sentences for different crimes, from different criminal episodes, imposed in different sentencing proceedings. Even making the assumptions that Graham could be thus extended, we reject defendant's claim. Defendant's sentence of fifty-five years before parole eligibility is not the functional equivalent of life without

parole, because it gives him a meaningful and realistic opportunity for parole well within the predicted lifespan for a person of defendant's age.

I.

The sentencing judge related the following facts. From late 1979 to 1981, defendant accumulated thirty-eight juvenile delinquency complaints, and six adjudications for robbery and other offenses. He was an escapee from a state institution, and was seventeen years and seven months old, when he committed the crimes at issue here.

On November 23, 1981, defendant led a vicious gang rape of a woman whose car broke down. He was charged in Indictment No. 81-00-03730 and was referred for trial as an adult. In 1983, a jury convicted him of four offenses, for which he is currently serving the following sentences: (1) twenty years in prison with ten years of parole ineligibility for first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1); (2) a consecutive ten years in prison with five years of parole ineligibility for second-degree robbery, N.J.S.A. 2C:15-1; (3) a consecutive twenty years in prison with ten years of parole ineligibility for first-degree aggravated sexual assault by vaginal penetration, N.J.S.A. 2C:14-2; and (4) a concurrent twenty years in prison with ten years of parole ineligibility for first-degree aggravated sexual

A-4169-11T2

assault by anal penetration, N.J.S.A. 2C:14-2. Defendant's total sentence under Indictment No. 81-00-03730 is fifty years in prison with twenty-five years of parole ineligibility.

On December 9, 1981, while still at large, defendant instigated and participated in the gang rape of a sixteen-year-old girl who was on her way to school. He was charged in Indictment No. 81-00-03729 and referred for trial as an adult. In a separate trial held in 1983, a jury convicted him of six offenses, for which he is currently serving the following sentences: (1) twenty years in prison with ten years of parole ineligibility for first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1); (2) a consecutive twenty years in prison with ten years of parole ineligibility for first-degree robbery, N.J.S.A. 2C:15-1; (3) a consecutive twenty years in prison with ten years of parole ineligibility for first-degree aggravated sexual assault by vaginal penetration, N.J.S.A. 2C:14-2; (4) a concurrent twenty years in prison with ten years of parole ineligibility for first-degree aggravated sexual assault by anal penetration, N.J.S.A. 2C:14-2; (5) a concurrent twenty years in prison with ten years of parole ineligibility for first-degree aggravated sexual assault by oral penetration, N.J.S.A. 2C:14-2; and (6) a concurrent five years in prison for third-degree unlawful possession of a knife, N.J.S.A. 2C:39-4(d).

Defendant's total sentence under Indictment No. 81-00-03729 is sixty years in prison with thirty years of parole ineligibility.

The sentencing judge made all of the sentences under Indictment No. 81-00-03729 consecutive to the sentences under Indictment No. 81-00-03730. As a result, defendant is currently serving an aggregate sentence on both indictments of 110 years with fifty-five years of parole ineligibility.

Originally, in 1983 and 1984, the sentencing judge had imposed an aggregate sentence on the two indictments of 150 years in prison with seventy-five years of parole ineligibility. We affirmed in separate orders, State v. Zuber, No. A-5323-85 (App. Div. Feb. 5, 1985); State v. Zuber, No. A-5330-84 (App. Div. Feb. 5, 1985). The Supreme Court summarily remanded to the trial court for reconsideration of defendant's sentences under State v. Yarbough, 100 N.J. 627 (1985), cert. denied, 475 U.S. 1014, 106 S. Ct. 1193, 89 L. Ed. 2d 308 (1986). State v. Zuber, 111 N.J. 643 (1988); State v. Zuber, 111 N.J. 650 (1988). On October 28, 1988, the sentencing judge imposed the revised sentences detailed above, changing from consecutive to concurrent the sentence on the count in each indictment charging aggravated sexual assault by anal penetration. In an order, we affirmed the revised sentences, rejecting defendant's claims

that the sentences were excessive. State v. Zuber, No. A-1768-88 (App. Div. Aug. 15, 1989).

Defendant filed a petition for post-conviction relief (PCR) that was denied in 2003. We affirmed. State v. Zuber, No. A-3284-03 (App. Div. Feb. 17, 2005). The Supreme Court denied certification. State v. Zuber, 184 N.J. 212 (2005). There is no indication that defendant claimed, in his PCR appeal or his prior appeals, that his sentence violated the Cruel and Unusual Punishment Clause of the United States or New Jersey Constitutions.

In 2010, defendant filed a motion to correct his sentence as unconstitutional under Graham. After hearing argument, Judge Michael A. Petrolle denied the motion on July 26, 2012, ruling defendant's revised sentence did not violate Graham. The judge found: "defendant does not have a sentence without parole. He has a sentence that carries a stipulated date that he could at the time be released if the parole board thought it was appropriate." The judge concluded: "There is parole opportunity here, it's just not as soon as he wants it."

Defendant's appeal was originally heard before an Excessive Sentencing Oral Argument panel, and then was transferred to the plenary calendar for full briefing and oral argument, after which we received supplemental briefing.

II.

In his brief, defendant raises the following arguments:

> POINT I - DEFENDANT'S SENTENCE OF 110 YEARS, 55 YEARS TO BE SERVED WITHOUT ELIGIBILITY FOR PAROLE IMPOSED FOR OFFENSES COMMITTED WHEN HE WAS A JUVENILE CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT AS PROHIBITED BY U.S. CONST. AMEND VIII; AND N.J. CONST. ART. I, ¶ 12.
>
> POINT II - DEFENDANT'S AGGREGATE SENTENCE AS IMPOSED CONSTITUTES AN ILLEGAL SENTENCE WHICH MAY BE CORRECTED AT ANY TIME.

"[A] truly 'illegal' sentence can be corrected 'at any time.'" State v. Acevedo, 205 N.J. 40, 47 n.4 (2011) (quoting R. 3:21-10(b)(5)). "[A]n illegal sentence is one that 'exceeds the maximum penalty provided in the Code for a particular offense' or a sentence 'not imposed in accordance with law.'" Id. at 45 (quoting State v. Murray, 162 N.J. 240, 247 (2000) (noting that "not imposed in accordance with law" includes "a disposition [not] authorized by the Code")). Defendant argues he can raise his claim now because a sentence is illegal if it constitutes cruel and unusual punishment.

We need not reach this argument for two reasons. First, the State does not dispute the timeliness of defendant's claim. Second, defendant filed his motion within one year of the Graham decision. It is not contested that "the constitutional right asserted [by defendant] was initially recognized by the United

States Supreme Court" in Graham. R. 3:22-12(a)(2)(A). Further, we find that right was "made retroactive" by that Court. Thus, we can and do consider defendant's motion as a second PCR petition. Ibid.; see R. 3:22-4(b)(2)(A).

Whether defendant's sentence is unconstitutional is an issue of law subject to de novo review. State v. Pomianek, 221 N.J. 66, 80 (2015). We must hew to that standard of review.

## III.

We begin by addressing the constitutional decisions invoked by defendant. The Eighth Amendment of the United States Constitution bars "cruel and unusual punishments." U.S. Const. amend. VIII. The Eighth Amendment is "made applicable to the States by the Due Process Clause of the Fourteenth Amendment." Graham, supra, 560 U.S. at 53, 130 S. Ct. at 2018, 176 L. Ed. 2d at 832; accord State v. Ramseur, 106 N.J. 123, 169 (1987).

In Graham, the United States Supreme Court addressed whether the Eighth Amendment prohibited a State from imposing a sentence of "life imprisonment without the possibility of parole" on a juvenile for a nonhomicide offense. Graham, supra, 560 U.S. at 53-54, 130 S. Ct. at 2018, 176 L. Ed. 2d at 832. The Court adopted "a categorical approach," analogizing to its "categorical rule[] prohibiting the death penalty for defendants who committed their crimes before the age of 18 [in] Roper v.

Simmons, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)." Id. at 61, 130 S. Ct. at 2022, 176 L. Ed. 2d at 837. The Court announced a "categorical rule[]" that "those who were below th[e] age [of 18] when the offense was committed may not be sentenced to life without parole for a nonhomicide crime." Id. at 74-75, 130 S. Ct. at 2030, 176 L. Ed. 2d at 845.

The Graham Court offered several rationales to support its categorical rule. First, the Court found that, though the laws of thirty-seven states and the federal government permitted juveniles to be sentenced to life without parole for a nonhomicide offense, the actual imposition of such sentences "is exceedingly rare. And 'it is fair to say that a national consensus has developed against it.'" Id. at 62-67, 130 S. Ct. at 2023-26, 176 L. Ed. 2d at 837-41 (citation omitted).[2]

Second, the Graham Court considered "the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question." Id. at 67, 130 S. Ct. at 2026, 176 L. Ed. 2d at 841. The Court reaffirmed that "juveniles have lessened culpability" because, "[a]s compared to adults, juveniles have a '"lack of maturity

---

[2] The Court also noted that "the United States is the only Nation that imposes life without parole sentences on juvenile nonhomicide offenders." Id. at 81, 130 S. Ct. at 2034, 176 L. Ed. 2d at 849.

and an underdeveloped sense of responsibility"'; they 'are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure'; and their characters are 'not as well formed.'" Id. at 68, 130 S. Ct. at 2026, 176 L. Ed. 2d at 841 (quoting Roper, supra, 543 U.S. at 569-70, 125 S. Ct. 1195, 161 L. Ed. 2d at 21-22). The Court also reiterated that "[j]uveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults." Ibid. (quoting Roper, supra, 543 U.S. at 570, 125 S. Ct. at 1195, 161 L. Ed. 2d at 22).

The Graham Court stressed that "life without parole is 'the second most severe penalty permitted by law.'" Id. at 69, 130 S. Ct. at 2027, 176 L. Ed. 2d at 842 (citation omitted). "[L]ife without parole sentences share some characteristics with death sentences that are shared by no other sentences." Ibid. "[T]he sentence alters the offender's life by a forfeiture that is irrevocable." Ibid. The Court added that life without parole was "an especially harsh punishment for a juvenile" because of the increased years and percentage of his life he would serve. Id. at 70, 130 S. Ct. at 2028, 176 L. Ed. 2d at 843.

Third, the Graham Court examined "whether the challenged sentencing practice serves legitimate penological goals." Id. at 67, 130 S. Ct. at 2026, 176 L. Ed. 2d at 841. The Court found that: "retribution does not justify imposing the second most severe penalty on the less culpable juvenile nonhomicide offender"; "[d]eterrence does not suffice to justify the sentence," because juveniles are "'less susceptible to deterrence'" and have "diminished moral responsibility"; incapacitation "is inadequate to justify that punishment" because it is "questionable" whether juveniles are "incorrigible"; and rehabilitation cannot justify such a sentence because it "den[ies] the defendant the right to reenter the community," which is inappropriate "in light of a juvenile nonhomicide offender's capacity for change and limited moral culpability." Id. at 71-74, 130 S. Ct. at 2028-30, 176 L. Ed. 2d at 844-45 (citations omitted).

The Graham Court found that the inadequacy of penological theory "to justify life without parole for juvenile nonhomicide offenders"; "the limited culpability of juvenile nonhomicide offenders; and the severity of life without parole sentences all lead to the conclusion that the sentencing practice under consideration is cruel and unusual." Id. at 74, 130 S. Ct. at 2030, 176 L. Ed. 2d at 845. The Court concluded that "[t]he

11

Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." Id. at 82, 130 S. Ct. at 2034, 176 L. Ed. 2d at 850.

The Court struck down Graham's sentence of life without parole for a nonhomicide offense even though there was judicial discretion to choose a lesser sentence. Id. at 77, 130 S. Ct. at 2031, 176 L. Ed. 2d at 847. Graham's conviction for armed burglary with assault or battery carried "the minimum nondeparture sentence" of five years, and the trial court exercised its judgment to sentence the juvenile to life without parole. Id. at 55-57, 130 S. Ct. at 2019-20, 176 L. Ed. 2d at 832-34. However, the Court ruled it "is inconsistent with the Eighth Amendment" to "sentenc[e] a juvenile nonhomicide offender to life without parole based on a subjective judgment that the defendant's crimes demonstrate an 'irretrievably depraved character.'" Id. at 76, 130 S. Ct. at 2031, 176 L. Ed. 2d at 846 (citation omitted).

The Court also rejected a "case-by-case approach" that "would allow courts to account for factual differences between cases and to impose life without parole sentences for particularly heinous crimes." Id. at 77, 130 S. Ct. at 2031, 176 L. Ed. 2d at 847. The Graham Court found that nonhomicide offenders were "categorically less deserving of the most serious

A-4169-11T2

forms of punishment than are murderers." Id. at 69, 130 S. Ct. at 2027, 176 L. Ed. 2d at 842. "Although an offense like robbery or rape 'is a serious crime deserving serious punishment,' those crimes differ from homicide crimes in a moral sense." Ibid. (citation omitted).

Two years after Graham, the United States Supreme Court held that for convictions of murder, "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" Miller v. Alabama, __ U.S. __, __, 132 S. Ct. 2455, 2460, 183 L. Ed. 2d 407, 414-15 (2012) (emphasis added). The Miller Court noted that its decision retained a distinction between homicide and nonhomicide offenses: "Graham established one rule (a flat ban) for nonhomicide offenses, while we set out a different one (individualized sentencing) for homicide offenses." Id. at __, 132 S. Ct. at 2466 n.6, 183 L. Ed. 2d at 420 n.6.

IV.

Defendant's claim under Graham poses numerous issues not resolved in Graham or Miller. Moreover, neither Graham nor Miller have been applied in a published opinion in New Jersey. See In re State ex rel. A.D., 212 N.J. 200, 215 n.6 (2012)

(noting Graham's ruling barring "the imposition of life without parole" on juveniles "is not an issue in this case").

A.

The first issue is whether Graham applies retroactively to sentences imposed prior to that decision. The parties agree it applies retroactively. We concur.

"Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), governs retroactivity under federal law." State v. Gaitan, 209 N.J. 339, 364 (2012). "A new rule generally does not apply retroactively to a case where direct appeal is over and the case is only being reviewed on a collateral basis." Ibid. (citing Teague, supra, 489 U.S. at 310, 109 S. Ct. at 1075, 103 L. Ed. 2d at 356). "A new rule only applies retroactively on collateral review if it fits into one of two exceptions: either it render[s] types of primary conduct beyond the power of the criminal law-making authority to proscribe, or it is a watershed rule[] that implicate[s] the fundamental fairness of the trial." Id. at 365 (internal quotation marks omitted). We need address only the first exception here.

"The first, limited exception is for new rules 'forbidding criminal punishment of certain primary conduct [including] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" O'Dell v.

14

Netherland, 521 U.S. 151, 157, 117 S. Ct. 1969, 1973, 138 L. Ed. 2d 351, 358 (1997) (quoting Penry v. Lynaugh, 492 U.S. 302, 330, 109 S. Ct. 2934, 2953, 106 L. Ed. 2d 256, 285 (1989)).  Thus, in Penry, the United State Supreme Court ruled that if "the Eighth Amendment prohibits the execution of mentally retarded persons such as Penry regardless of the procedures followed, such a rule would fall under the first exception to the general rule of nonretroactivity and would be applicable to defendants on collateral review."  Penry, supra, 492 U.S. at 330, 109 S. Ct. at 2953, 106 L. Ed. 2d at 285-86.

In Graham, the Court expressly prohibited "a particular type of sentence as it applies to an entire class of offenders."  Graham, supra, 560 U.S. at 61, 130 S. Ct. at 2022-23, 176 L. Ed. 2d at 837.  Because Graham "bars the imposition of a sentence of life imprisonment without parole on a juvenile offender," it falls within the first Teague exception as explained by Penry, and thus "was therefore made retroactive on collateral review by the [United States] Supreme Court as a matter of logical necessity[.]"  In re Sparks, 657 F.3d 258, 262 (5th Cir. 2011) (citing Tyler v. Cain, 533 U.S. 656, 121 S. Ct. 2478, 150 L. Ed. 2d 632 (2001)).

The federal and state courts that have decided the issue have unanimously found Graham retroactive.  See, e.g., Moore v.

15

Biter, 725 F.3d 1184, 1190-91 (9th Cir. 2013), reh'g denied, 742 F.3d 917 (9th Cir. 2014); In re Moss, 703 F.3d 1301, 1303 (11th Cir. 2013); St. Val v. State, 107 So. 3d 553, 554 (Fla. Dist. Ct. App. 2013); Bonilla v. State, 791 N.W.2d 697, 700-01 (Iowa 2010); Beach v. State, 348 P.3d 629, 641 (Mont. 2015); see In re Williams, 759 F.3d 66, 70 (D.C. Cir. 2014) (federal prosecutors agree "Graham is retroactive to cases on collateral review").[3] We agree with those decisions, and hold that Graham applies retroactively to defendant's case under Teague.[4]

B.

Second, defendant's appeal raises the issue of whether Graham's holding is restricted to a sentence of "life without

---

[3] By contrast, courts have differed on the retroactivity of Miller, which does not categorically ban life without parole sentences for juveniles convicted of homicide. Beach, supra, 248 P.3d at 639; Davis v. McCollum, 798 F.3d 1317, __ (10th Cir. 2015); State v. Lyle, 854 N.W.2d 378, 389 n.5 (Iowa 2014). The United States Supreme Court has granted certiorari in cases considering Miller's retroactivity. Montgomery v. Louisiana, __ U.S. __, 135 S. Ct. 1546, 191 L. Ed. 2d 635 (2015); see Toca v. Louisiana, __ U.S. __, 135 S. Ct. 781, 190 L. Ed. 2d 649 (2014), cert. dismissed, __ U.S. __, 135 S. Ct. 1197, 191 L. Ed. 2d 149 (2015).

[4] Because Graham's new rule is retroactive under the first Teague exception, "'United States Supreme Court precedents control the scope of retroactivity.'" State v. Purnell, 161 N.J. 44, 53 (1999) (quoting State v. Lark, 117 N.J. 331, 335 (1989)); see Danforth v. Minnesota, 552 U.S. 264, 266, 128 S. Ct. 1029, 1032, 169 L. Ed. 2d 859, 862 (2008). Thus, we need not determine whether we would "reach the same conclusion using a state retroactivity analysis." Gaitan, supra, 209 N.J. at 373.

parole," or can be extended to cover a sentence expressed in a term of years. "The Supreme Court has not yet decided the question whether a lengthy term-of-years sentence is, for constitutional purposes, the same as a sentence of life imprisonment without the possibility of parole." United States v. Cobler, 748 F.3d 570, 580 n.4 (4th Cir.), cert. denied, ___ U.S. ___, 135 S. Ct. 229, 190 L. Ed. 2d 173 (2014). We assume, without deciding, that Graham could be extended to apply to a sentence for a single offense expressed, not as "life without parole," but as a term of years without parole equaling or exceeding the life expectancy of a person of defendant's age. See id. at 580 ("assuming, without deciding, that Cobler's 120-year term of imprisonment is functionally equivalent to a sentence of life imprisonment without the possibility of parole").

## C.

Third, defendant's appeal raises the issue of whether Graham's holding, which barred a life without parole sentence for a single nonhomicide offense, can be extended to cover aggregate sentences imposed consecutively for multiple offenses. "The [Graham] Court did not address juvenile offenders . . . who received consecutive, fixed-term sentences for committing multiple nonhomicide offenses." Bunch v. Smith, 685 F.3d 546,

17                                                    A-4169-11T2

551 (6th Cir. 2012), cert. denied, __ U.S. __, 133 S. Ct. 1996, 185 L. Ed. 2d 865 (2013). "[C]ourts across the country are split over whether Graham bars a court from sentencing a juvenile nonhomicide offender to consecutive, fixed terms resulting in an aggregate sentence that exceeds the defendant's life expectancy." Id. at 552; compare State v. Kasic, 265 P.3d 410, 414 (Ariz. Ct. App. 2011), People v. Gay, 960 N.E.2d 1272 (Ill. App. Ct. 2011), appeal denied, 981 N.E.2d 1000 (Ill. 2012), State v. Brown, 118 So. 3d 332, 336-37, 341-42 (La. 2013), and State v. Ramos, __ P.3d __, __ (Wash. Ct. App. Aug. 13, 2015) (slip op. at 1-3), with People v. Caballero, 282 P.3d 291, 295 (Cal. 2012), and Henry v. State, __ So. 3d __, __, 2015 Fla. LEXIS 533 (Fla. Mar. 19, 2015). We assume, without deciding, that Graham could be extended to apply to a situation where a defendant commits a number of offenses in a single criminal episode and receives a number of term-of-year sentences that are imposed consecutively and result in an aggregate sentence equaling or exceeding the life expectancy of a person of defendant's age.

D.

Fourth, defendant's appeal raises the issue of whether Graham can be extended to cover sentences imposed for multiple criminal episodes, including those addressed in separate

sentencings.  See, e.g., Carmon v. State, 456 S.W.3d 594, 601 (Tex. App. 2014) ("Nothing in Graham precludes . . . sentences [] for a different criminal episode . . . from running consecutively.").  We assume, without deciding, that Graham could be extended to apply to a situation where a defendant commits separate criminal episodes and is separately sentenced to term-of-year sentences which are imposed consecutively and result in an aggregate sentence equaling or exceeding the life expectancy of a person of defendant's age.

V.

Thus, assuming Graham could be extended to apply to defendant's total sentence, even though it was aggregated from consecutive sentences for six offenses in two criminal episodes, imposed in two separate sentencing hearings, we consider whether defendant's aggregate sentence violates Graham.

In Graham, the United States Supreme Court found sentencing juveniles to life without parole unconstitutional because "[i]t deprives the convict of the most basic liberties without giving hope of restoration[.]"  Graham, supra, 560 U.S. at 69-70, 130 S. Ct. at 2027, 176 L. Ed. 2d at 842.  Life without parole "'means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the

convict], he will remain in prison for the rest of his days.'" Id. at 70, 130 S. Ct. at 2027, 176 L. Ed. 2d at 842 (citation omitted).

The Graham Court required States to "give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Id. at 75, 130 S. Ct. at 2030, 176 L. Ed. 2d at 846. The Court found Graham's sentence of life without parole "guarantee[d] he will die in prison without any meaningful opportunity to obtain release" and "denied him any chance to later demonstrate that he is fit to rejoin society." Id. at 79, 130 S. Ct. at 2033, 176 L. Ed. 2d at 848. The Court ruled that "[a] State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." Id. at 82, 130 S. Ct. at 2034, 176 L. Ed. 2d at 850.

This language from Graham indicates that life without parole is barred because it prevents a juvenile defendant convicted of a nonhomicide offense from having a meaningful and realistic opportunity to obtain parole review during his lifespan. If Graham's holding is extended to term-of-years sentences, the prediction of a defendant's lifespan must be based on life expectancy. See, e.g., State v. Springer, 856

N.W.2d 460, 468-69 (S.D. 2014) (rejecting a <u>Graham</u> claim because defendant failed to present evidence of life expectancy).

<u>Caballero</u>, the case on which defendant relies, held that "sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment." <u>Caballero</u>, <u>supra</u>, 282 <u>P.</u>3d at 295; <u>see</u> <u>id.</u> at 294 n.3 (finding "that the term 'life expectancy' means the normal life expectancy of a healthy person of defendant's age and gender living in the United States"). Other courts have ruled similarly. <u>See, e.g.</u>, <u>Henry</u>, <u>supra</u>, __ <u>So.</u> 3d at __ (<u>Graham</u> requires that juvenile defendants receive a meaningful opportunity for release "during their natural lives"); <u>People v. Gipson</u>, 34 <u>N.E.</u>3d 560, 580 (Ill. App. Ct. 2015).

Here, we find that defendant's aggregate sentence does not violate <u>Graham</u>, because he has a meaningful and realistic opportunity for release during the life expectancy of a person of defendant's age living in the United States. To make that determination, we utilize the national life expectancy tables issued by the federal government, which have long been used by the New Jersey courts.

21                                                    A-4169-11T2

In our Court Rules, we have adopted a table of "Life Expectancies for All Races and Both Sexes." Pressler & Verniero, Current N.J. Court Rules, Appendix I to R. 1:13-5 at www.gannlaw.com (2016). Appendix I is derived from the National Vital Statistics Reports (NVSR), Vol. 52, No. 14 (Feb. 18, 2004).[5]

It is appropriate to use the NVSR to determine the average life expectancies and predicted lifespan of defendants in the context of Graham. The NVSR are issued by the Centers for Disease Control and Prevention (CDC). The CDC states that "[t]he National Vital Statistics System is the oldest and most successful example of inter-governmental data sharing in Public Health[.]"[6] The NVSR's "United States Life Tables" are based on recent mortality statistics, the most recent available census information, and Medicare data. See, e.g., 2004 NVSR, supra, at 1. Our Court Rules provide that Appendix I's life expectancy

---

[5]  Available at http://www.cdc.gov/nchs/data/nvsr/nvsr52/nvsr52_14.pdf [hereinafter "2004 NVSR"].

[6]  Centers for Disease Control and Prevention, National Vital Statistics System, http://www.cdc.gov/nchs/nvss.htm (last updated Sept. 30, 2015).

A-4169-11T2

tables, based on the NVSR, "shall be admissible in evidence as prima facie proof of the facts therein contained." R. 1:13-5.[7]

Trial courts sentencing juvenile defendants to substantial periods of parole ineligibility should use the NVSR's most recent available data in determining what sentence meets Graham's requirements. Specifically, the court should locate the most recent "United States Life Tables" and consult the "Expectation of life at age x" column of Table 1, "Life table for the total population: United States," to determine the average life expectancy for a person of the same age as defendant's current age at the date of sentencing. The most recent NVSR tables are based on the most current available data, and thus provide a more accurate calculation of average life expectancy. The NVSR's most recent "United States Life Tables" are readily available online.[8]

Similarly, post-conviction courts addressing Graham claims newly raised by already-sentenced defendants, like defendant

---

[7] Life expectancy data from the NVSR has been used by numerous courts in adjudicating claims under Graham and Miller. See, e.g., People v. Lewis, 165 Cal. Rptr. 3d 624, 632 (Ct. App. 2013); People v. Mendez, 114 Cal. Rptr. 3d 870, 882 (Ct. App. 2010).

[8] See Centers for Disease Control and Prevention, Publications and Info Products — National Vital Statistics Reports, http://www.cdc.gov/nchs/products/nvsr.htm (last visited October 15, 2015).

here, should use the NVSR's most recent available "United States Life Tables." Again, these most recent tables provide the most accurate available calculation of average life expectancy. Similar tables may not be readily available for the year in which the inmate was originally sentenced. Even if such older tables were available, using them now would be inaccurate, because it would ignore that the defendant has lived to his current age and thus is likely to have a longer average lifespan. The post-conviction court should use the most current and accurate data available at the time the newly-raised Graham claim is adjudicated, rather than try to turn back the clock to apply outdated data to a hypothetical and outmoded "original sentencing."[9]

Thus, to determine whether defendant's current period of parole ineligibility could violate Graham, we consider life expectancy for a person of defendant's age at the time Judge Petrolle heard defendant's motion in July 2012. At that time, defendant was forty-eight years old. The most recent "United States Life Tables" were in the National Vital Statistics

_____

[9] Once a defendant's Graham claim has been adjudicated by a sentencing court or post-conviction court, neither the defendant nor the State may ask the courts to revisit its life expectancy analysis as the incarcerated defendant ages or the defendant's health declines. The constitutionality of the length of the sentence should not be continually relitigated in successive applications for relief.

24

Reports, Vol. 59, No. 9 (Sept. 28, 2011).[10] Under the 2011 NVSR's Table 1, "Life table for the total population: United States, 2007," a person who is between forty-eight and forty-nine years old has an average life expectancy of 32.7 years, and thus is predicted to live to be more than eighty years old. Id. at 8.[11]

Defendant's current sentence provides for fifty-five years of parole ineligibility. As defendant has been in custody since December 9, 1981, it is undisputed he will be eligible for parole no later than 2036, when he will be seventy-two years old. Indeed, defendant may be eligible for parole even earlier.[12] Thus, defendant's current sentence gives him an

_____

[10] Available at http://www.cdc.gov/nchs/data/nvsr/nvsr59/nvsr59_09.pdf.

[11] The lifespan under the 2011 NVSR is longer than under Appendix I, which states, based on the 2004 NVSR data, that a person who is forty-eight years old has an average life expectancy of 32.0 years and thus a predicted lifespan of exactly eighty years old. The lifespan under the 2011 NVSR is shorter than under the most recently-issued National Vital Statistics Reports, Vol. 64, No. 11, "United States Life Tables, 2011" (Sept. 22, 2015), available at http://www.cdc.gov/nchs/data/nvsr/nvsr64_11.pdf. It predicts a person who is forty-eight years old has an average life expectancy of 33.3 years, and thus is predicted to live to be over eighty-one years old. Id. at 9. We do not apply that most recent data, because it was not available at the time of Judge Petrolle's decision. In any event, our conclusion would be the same using these average life expectancies.

[12] Defendant notes that the Department of Corrections website lists his parole eligibility date as March 31, 2033, when he is
(continued)

opportunity to be paroled approximately eight years before the end of the eighty-year predicted lifespan of a forty-eight-year-old. Put another way, if paroled at that opportunity, he will live at least the last ten percent of his predicted lifespan outside of prison. Thus, defendant has an opportunity for parole substantially before the end of the relevant predicted lifespan.

Further, that opportunity for parole is meaningful and realistic. Defendant is not "deprived of the opportunity to achieve maturity of judgment and self-recognition of human worth and potential," or of the "chance to demonstrate maturity and reform" at his parole hearing. Graham, supra, 560 U.S. at 79, 130 S. Ct. at 2032, 176 L. Ed. 2d at 848. According to the State, defendant will have access to the "counseling, education, and rehabilitation programs for those who are []eligible for parole consideration." Id. at 79, 130 S. Ct. at 2033, 176 L. Ed. 2d at 848. His "'good behavior and character improvement'" will be material in that hearing. Id. at 70, 130 S. Ct. at 2027, 176 L. Ed. 2d at 842. This is not a sentence that

---

(continued)
not yet seventy years old. He claims this is a miscalculation. We need not resolve this apparent discrepancy for purposes of our constitutional analysis. We leave the clarification of the actual date to the Department or the Parole Board to address in due course.

"den[ies] convicts the possibility of parole," id. at 70, 130 S. Ct. at 2027, 176 L. Ed. 2d at 842, or leaves defendant with "no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope." Id. at 79, 130 S. Ct. at 2032, 176 L. Ed. 2d at 848.

Thus, defendant's sentence gives him a meaningful and realistic opportunity for release during his predicted lifespan, and does not violate Graham, even assuming it could be extended to apply to defendant's aggregate, separately-imposed term-of-years sentences for multiple criminal episodes. See, e.g., Smith v. State, 93 So. 3d 371, 374-75 (Fla. Dist. Ct. App. 2012) (upholding a sixty-three-year sentence reduced by gain time); Thomas v. State, 78 So. 3d 644, 646 (Fla. Dist. Ct. App. 2011) (upholding a fifty-year sentence). We reject defendant's claim that his aggregate sentence is the "functional equivalent" of a sentence of life without parole.

Because the predicted lifespan of a forty-eight-year-old person exceeds defendant's parole eligibility date by approximately eight years, we need not decide what lesser number of years would be sufficient. However, we do not agree with the assertion in State v. Null, 836 N.W.2d 41, 71 (Iowa 2013), and Bear Cloud v. State, 334 P.3d 132, 142 (Wyo. 2014), that a defendant's so-called "geriatric release" is insufficient to

satisfy Graham or Miller. Unlike Casiano v. Comm'r of Corr., 115 A.3d 1031, 1046-47 (Conn. 2015), we do not believe Graham mandates that defendants have a "meaningful life outside of prison" in which to "engage meaningfully" in a career or raising a family. Rather, Graham only requires a meaningful and realistic "opportunity to obtain release." Graham, supra, 560 U.S. at 75, 79, 82, 130 S. Ct. at 2030, 2033, 2034, 176 L. Ed. 2d at 846, 848, 850. Nothing in Graham or Miller requires more.

## VI.

Defendant agrees we should rely on CDC life expectancy data.[13] However, he argues that the pertinent CDC statistics are those for black males at birth. At the hearing before Judge Petrolle, defendant provided "the CVC [sic] lifespan tables" showing that "the average lifespan of a black male is 60" at the time of defendant's birth in 1964, and "even to this day, it is 69 to 70 years of age." Defendant's pro se brief on appeal similarly argues that we should look at life expectancy of a

---

[13] Defendant has not argued that life expectancy must be predicted based on his own individual health, personal life history, and particular circumstances. In any event, such an inquiry would be wholly impractical, be prone to dispute and error, and introduce widespread disparities. It would turn juvenile sentencings, and Graham motion hearings, into medical guessing games and battles of experts. Like defendant, we believe the CDC data provides a more reliable, manageable, and fair method of determining life expectancy.

black male at the time of defendant's birth, citing data from the CDC's National Center for Health Statistics.[14]

However, it is particularly inappropriate to use statistics about newborns to determine the average life expectancy of a juvenile who has survived the mortality risks of infancy and childhood and reached almost eighteen years old. It is even more inappropriate to apply statistics for newborns to adult defendants who bring a Graham claim long after sentencing. Since committing his crimes, defendant had survived three decades' worth of risks, and had reached the age of forty-eight at the time of the hearing before Judge Petrolle. His motion should be decided based on his age at the time of the hearing.

Moreover, it is problematic to use statistics based on race and sex. We recognize that Tables 2 and 3 in the NVSR set forth average life expectancy based on sex. See 2011 NVSR, supra, at 10-13 (showing that the average life expectancy of a forty-eight-year-old is 30.7 years for males, and 34.5 years for

---

[14] Using the more recent data from the 2011 NVSR, and the more pertinent age of a forty-eight-year-old, the average life expectancy is 27.0 years for black males and 26.7 years for non-Hispanic black males. Id. at 22, 40. Either figure produces a predicted lifespan exceeding defendant's parole eligibility date by approximately three years or more.

females).[15]   Other tables in the NVSR set forth average life expectancies for whites, blacks, and Hispanics.  Id. at 14-43 (showing the average life expectancy of a forty-eight-year-old is 32.9 years for whites, 29.7 years for blacks, and 35.3 years for Hispanics).  Additional tables break down that data further, including by sex.  Ibid.

We believe using tables based on sex, race, or ethnicity would introduce disparities that are inconsistent with constitutional standards and penological goals.  See generally State v. Ramseur, 106 N.J. 123, 330 (1987) (stressing that the structure of capital sentencing must "prevent discrimination on an impermissible basis, including, but not limited to, race and sex").  Applying such tables to juvenile offenders would mean that females would receive longer sentences than males, Hispanics would receive longer sentences than whites or blacks, and Hispanic females would receive the longest sentences of all. See 2011 NVSR, supra, at 14-43.  Also, allowing consideration of sex, race, or ethnicity might lead to claims that courts must differentiate among other races, ethnicities, or gender identities (e.g., Asian-Americans) not yet covered by the NVSR

---

[15] Earlier versions of Appendix I did likewise.  That practice was abandoned when the rules were made gender neutral.  See Pressler, Current N.J. Court Rules, Appendix I to R. 1:13-5 (1993).

tables, leading to problems of proof, difficulties of administration, and additional disparities. Nor should sentencing courts be required to resolve disputes over a defendant's race, ethnicity, or gender identity.

Furthermore, using data based on race, ethnicity, or sex ignores the equalizing effect of the shared environment provided by incarceration. The disparities between the races, ethnicities, and sexes — in wealth, housing, diet, health care, occupation, and exposures to violence — that exist outside of prison, and affect life expectancy, are much reduced or eliminated in prison.[16]

Nonetheless, defendant argues that his aggregate sentence is the "functional equivalent" of life without parole. He cites Caballero, but there the California Supreme Court found Graham barred an aggregate sentence of 110 years to life, "requiring defendant to serve a minimum of 110 years before becoming parole eligible." Caballero, supra, 282 P.3d at 295. By contrast, defendant's sentence of fifty-five years before parole

_____

[16] Defendant has not argued that the average life expectancy of persons is shorter if they are in prison. That is not self-evident, as our prisons are obligated to supply inmates with steady nourishment, access to free medical care, and secure housing which, while not perfect, may be superior to what they had outside of prison. In any event, such estimates are unlikely to be as available or indisputable as the CDC tables cited above, may add unmanageable complexity, and may create additional disparities.

eligibility is not the functional equivalent of life without parole, because it gives him a meaningful and realistic opportunity for parole well within the predicted lifespan for a person of defendant's age. See, e.g., Smith, supra, 93 So. 3d at 374-75.

Defendant next argues that the intent of the sentencing judge was to incarcerate him for the remainder of his life without the opportunity for parole. Defendant cites the original 1983 sentencing hearing on Indictment No. 81-00-03730, when the judge stated that "there is absolutely no prospect" of rehabilitation for defendant, who did not "belong in society" and should "be isolated for as long as the law allows." Defendant also cites the original 1984 statement of reasons for Indictment No. 81-00-03729, where the sentencing judge stated: "The only way to protect society from this extremely dangerous and immoral individual is to be absolutely assured that he will be incarcerated for the rest of his natural life. Society should never be exposed to his likes again."

However, as set forth above, those original sentencing proceedings imposed a much longer aggregate sentence of 150 years in prison with seventy-five years of parole ineligibility. After the Supreme Court remanded the case for reconsideration, the sentencing judge removed forty years in prison and twenty

years of parole ineligibility, "so that his overall sentence has been reduced from 150 years with 75 years of parole ineligibility to 110 years with 55 years of parole ineligibility."

## VII.

Accordingly, we reject defendant's claim that his sentence violates <u>Graham</u>'s interpretation of the Eighth Amendment's Cruel and Unusual Punishment Clause. We similarly reject defendant's undeveloped claim that his sentence violates "the corresponding provision in Article I, paragraph 12 of the New Jersey Constitution." <u>State v. Johnson</u>, 166 <u>N.J.</u> 523, 548 (2001). Defendant does not show a violation under New Jersey's "three-part test," <u>ibid.</u>, because he failed to make "a substantial showing" that his punishment for leading these two brutal gang rapes does not "conform[] with contemporary standards of decency," "is grossly disproportionate to the offense[s]," or "goes beyond what is necessary to accomplish any legitimate penological objective." <u>Ibid.</u>; see <u>Ramseur</u>, <u>supra</u>, 106 <u>N.J.</u> at 169 (noting that the three-part test under the New Jersey Constitution was "generally the same as that applied under the federal Constitution").[17]

---

[17] Because we rule that defendant's sentence was not cruel and unusual punishment even assuming that <u>Graham</u> could be extended

(continued)

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

(continued)
to cover aggregate, consecutive term-of-years sentences, arising out of multiple criminal episodes, and imposed in different sentencing proceedings, we need not reach the State's argument that such an extension of <u>Graham</u> should not be retroactively applied.

A-4169-11T2