# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2677-18T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RICKY ZUBER,

    Defendant-Appellant.

_____

Argued telephonically March 23, 2020 –
Decided May 6, 2020

Before Judges Sabatino, Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 81-06-3729 and 81-06-3730.

James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; James K. Smith, Jr., of counsel and on the briefs).

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens

II, Acting Essex County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the brief).

PER CURIAM

This case[1] returns to us following a remand by our Supreme Court directing the trial court to conduct a second resentencing to comport with the Eighth Amendment of the United States Constitution.  See State v. Zuber, 227 N.J. 422, cert. denied, ___ U.S. ___, 138 S. Ct. 152 (2017).

In 1981, at the age of seventeen, Zuber and others sexually assaulted a woman and a high school student in two separate incidents, after threatening to kill those victims at knifepoint.  He was waived to the adult criminal court and, in two jury trials, was convicted of numerous offenses, including aggravated sexual assault, kidnapping, and robbery.

The judge who presided over the trials initially imposed consecutive prison sentences aggregating 150 years, subject to a 75-year aggregate period of

---

[1]  Because of some related issues, this appeal was argued back to back with two other appeals that concern the constitutionality of lengthy sentences imposed on minors who committed very serious crimes and were tried as adults, State v. James Zarate, A-2001-17, and State v. Comer, A-1230-18.  Comer's case was a companion to Zuber's before the Supreme Court and was decided with Zuber's in a consolidated opinion. 227 N.J. at 422, 453.  We issue opinions in all three cases today.

parole ineligibility.  We upheld Zuber's convictions on direct appeal, and they are not contested here.

In 1988, the Supreme Court summarily remanded the matter for a first resentencing to reconsider the imposition of the consecutive sentences under state law, specifically State v. Yarbough, 100 N.J. 627 (1985).  State v. Zuber, 111 N.J. 650 (1988).  At the first resentencing in 1988, the trial court revised Zuber's sentence to an aggregate term of 110 years, with a 55-year parole disqualifier.  This first resentencing left intact much of the consecutive aspects of the aggregate sentence.

After the United States Supreme Court held in Graham v. Florida, 560 U.S. 48 (2010), that sentencing a juvenile offender to life without parole for a non-homicide offense violates the Cruel and Unusual Punishment Clause of the Eighth Amendment, Zuber moved for relief in the trial court.  He argued that his aggregate 110-year term/55-year parole-ineligible sentence is the functional equivalent of life without parole, and that the consecutive sentences imposed upon him are unconstitutionally punitive.

The trial court in 2012 denied Zuber any further reduction of his sentence. This court affirmed that ruling.  We held that Zuber's sentence was not the functional equivalent of life without parole, because life expectancy tables

3

indicated that he has a realistic possibility of having several years of freedom after serving his custodial term. State v. Zuber, 442 N.J. Super. 611, 627 (App. Div. 2015). We also declined to set aside the consecutive aspects of Zuber's sentence. Id. at 625.

In its opinion reversing and remanding this matter, the Court rejected this court's reliance on life expectancy tables. Zuber, 227 N.J. at 450. The Court determined that Zuber's then-existing lengthy sentence should be analyzed as one that is the functional equivalent of life without parole, and thereby must comport with associated Eighth Amendment limitations. Id. at 450-53. The Court accordingly instructed the trial court to reconsider Zuber's lengthy consecutive sentences, in light of the youth-related constitutional factors prescribed by the United States Supreme Court in Miller v. Alabama, 567 U.S. 460 (2012), and its progeny. It also instructed the trial court to consider consecutive terms for juveniles under the Yarbough guidelines with "a heightened level of care." Zuber, 227 N.J. at 450.

Among other things, our Supreme Court directed the trial court to "consider the Miller factors when it determines the [appropriate] length of his sentences and when it decides whether the counts of conviction should run

consecutively." Id. at 453. The Court further directed the trial court to "consider any rehabilitative efforts since [Zuber's] original sentence" in 1983. Ibid.

On remand at the second resentencing in January 2019, a different trial court judge endeavored to apply the Miller factors and concluded that a further reduction of Zuber's sentence was constitutionally warranted. As part of his written analysis, the judge expressly found, under what is known as the "fifth" Miller factor, that Zuber is "not irreparably corrupt," and that "he presented strong evidence of rehabilitative efforts." Even so, the judge was also persuaded that other Miller factors weighed against Zuber's plea for immediate release.

Adopting a suggestion by the prosecutor, the judge resentenced Zuber to an aggregate sentence of 86 years, with an aggregate 43-year period of parole ineligibility. The judge found this altered sentence will provide Zuber "both a meaningful opportunity to be released and hope that he will have a life outside prison." According to Zuber's counsel, he is not eligible for parole under this revised sentence until April 2025.

On his present appeal, Zuber, who is now age fifty-six and who has not had a disciplinary infraction in prison in over a decade, argues that his continued imprisonment is unconstitutional. He asserts the trial court misapplied the Miller factors at the second resentencing.

Among other things, Zuber contends the trial court failed to adhere to the Supreme Court's direction that, in order to comply with the Eighth Amendment, judges must "exercise a heightened level of care" when imposing "multiple consecutive sentences on juveniles." Zuber, 227 N.J. at 450. He urges that we order his immediate release or, alternatively, a further reduction of his sentence and a prompt hearing before the Parole Board.

For the reasons that follow, we affirm the trial court in part with respect to its denial of Zuber's request for immediate release, but remand in part for yet another resentencing. Specifically, we instruct the court to reconsider the application of the Miller factors to the consecutive aspects of Zuber's sentence with a "heightened level of care," particularly as to the two robbery counts.

## I.

Much has already been written about Zuber's case, and we need not repeat all of the factual and procedural details here. We incorporate by reference the background recited at length in our previous published opinion and the Supreme Court's 2017 opinion.

## A.

We begin our discussion with a recognition that Zuber acknowledges today that he committed atrocious crimes on two occasions in November 1981

and December 1981 at the age of seventeen.  As described in the Supreme

Court's opinion:

> Defendant Ricky Zuber participated in two separate gang rapes in November and December 1981, when he was seventeen years old. In the first, he and others forced a woman at knife-point to drive to a nearby cemetery, where the group raped her repeatedly and threatened her with disfigurement. Afterward, the group abandoned the woman naked in the cemetery. In the second incident, Zuber and others abducted a sixteen-year-old high school student, drove her to an unknown location, and raped her repeatedly. Zuber was the "ringleader" of both assaults.
>
> [Id. at 430.]

Zuber's convictions, and corresponding sentences after they were first

revised on remand in 1988, were as follows.  For the gang rape and related

crimes committed in November 1981:

- 20 years' imprisonment with 10 years of parole ineligibility for first-degree kidnapping, N.J.S.A. 2C:13–1(b)(1);

- A consecutive term of 10 years' imprisonment with 5 years of parole ineligibility for second-degree robbery, N.J.S.A. 2C:15–1;

- A second consecutive term of 20 years' imprisonment with 10 years of parole ineligibility for first-degree aggravated sexual assault by vaginal penetration, N.J.S.A. 2C:14–2; and

7

- A concurrent term of 20 years' imprisonment with 10 years of parole ineligibility for first-degree aggravated sexual assault by anal penetration, N.J.S.A. 2C:14–2—which the court originally imposed as a consecutive term.

[Id. at 430-31.]

The aggregate sentence for the November 1981 offense after the first resentencing was therefore 50 years of imprisonment, with 25 years of parole ineligibility. Id. at 431.

As for the gang rape and related offenses that Zuber committed in December 1981, the court on the first resentencing imposed the following terms:

- 20 years' imprisonment with 10 years of parole ineligibility for first-degree kidnapping, N.J.S.A. 2C:13–1(b)(1);

- A consecutive term of 20 years' imprisonment with 10 years of parole ineligibility for first-degree robbery, N.J.S.A. 2C:15–1;

- A second consecutive term of 20 years' imprisonment with 10 years of parole ineligibility for first-degree aggravated sexual assault by vaginal penetration, N.J.S.A. 2C:14–2;

- A concurrent term of 20 years' imprisonment with 10 years of parole ineligibility for first-degree aggravated sexual assault by anal penetration, N.J.S.A. 2C:14–2—which the court had originally imposed as a consecutive term;

- A concurrent term of 20 years' imprisonment with 10 years of parole ineligibility for first-degree aggravated sexual assault by oral penetration, N.J.S.A. 2C:14–2; and

- A concurrent term of 5 years' imprisonment for third-degree unlawful possession of a knife, N.J.S.A. 2C:39–4(d).

[Ibid.]

Hence, the aggregate sentence for the December 1981 offense was 60 years' imprisonment, with 30 years of parole ineligibility. Ibid.

At the first resentencing, the trial court ordered that the sentences for both sets of sentences were to run consecutively. This produced a total sentence of 110 years, with a 55-year cumulative period of parole ineligibility. Ibid.

B.

We also need not repeat here the analysis of applicable United States Supreme Court case law under the Eighth Amendment that is extensively set forth in the Zuber decision. Id. at 438-446. Distilled to its essence, those cases instruct that offenders who are minors, because of their immaturity, cannot be sentenced to life in prison without the possibility of parole (or the functional equivalent of such an "LWOP" sentence) unless the sentencing judge sufficiently takes into account "how children are different, and how those

differences counsel against irrevocably sentencing them to a lifetime in prison."

Miller, 567 U.S. at 480; see also Zuber, 227 N.J. at 445-46.

Those factors, which have come to be known as the "Miller factors," examine five considerations. Specifically, mandatory life without parole for a juvenile, or its functional equivalent, unconstitutionally:

> [1] precludes consideration of his chronological age and its hallmark features — among them, immaturity, impetuosity, and failure to appreciate risks and consequences.
>
> [2] It prevents taking into account the family and home environment that surrounds him — and from which he cannot usually extricate himself — no matter how brutal or dysfunctional.
>
> [3] It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him.
>
> [4] Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth — for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.
>
> [5] And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.
>
> [Zuber, 227 N.J. at 445 (quoting Miller, 567 U.S. at 477-78).]

A-2677-18T2

These constitutional factors apply retroactively to juvenile offenders such as Zuber who received lengthy adult sentences before the United States Supreme Court issued its <u>Miller</u> opinion. <u>Montgomery v. Louisiana</u>, 577 U.S. ___, 136 S. Ct. 718, 734 (2016); <u>Zuber</u>, 227 N.J. at 446.

In its opinion remanding this matter for a second resentencing to apply the <u>Miller</u> factors, our Supreme Court issued clear instructions to the trial court.

> In light of the above analysis, Zuber is entitled to be resentenced. At a new sentencing hearing, the trial court should consider the <u>Miller</u> factors when it determines the length of his sentence and when it decides whether the counts of conviction should run consecutively. In short, the court should consider factors such as Zuber's "immaturity, impetuosity, and failure to appreciate risks and consequences"; "family and home environment"; family and peer pressures; "inability to deal with police officers or prosecutors" or his own attorney; and "the possibility of rehabilitation." The sentencing judge should also "view Zuber as he stands before the court" at resentencing and consider any rehabilitative efforts since his original sentence.
>
> [<u>Zuber</u>, 227 N.J. at 453 (citations omitted).]

As already noted, the Court's instructions also included the requirement to apply a "heightened level of care" when deciding whether to sentence Zuber to multiple consecutive sentences. <u>Id.</u> at 430.

11

## C.

With this backdrop in mind, we discuss the record that was developed at the second resentencing proceedings on remand.

At the September 6, 2018 remand hearing, the trial court heard presentations from defense counsel, the prosecutor, Zuber, Zuber's family members and Pamela Benjamin from the New Jersey Parents Caucus/Juvenile Justice Initiative. Neither victim appeared, as one was deceased and the other could not be located.

The trial court also considered: a May 24, 2018 sex offender evaluation; an August 17, 2018 sexually violent predator risk assessment; certifications showing the prison programs Zuber had completed; two undated letters from Zuber; and letters from Zuber's family requesting leniency.

Dr. Mark Frank, a licensed psychologist and Forensic Mental Health Clinician who conducted a sex offender evaluation of Zuber, reported in May 2018 that Zuber admitted to sexually assaulting the first victim. He said that he had sexually assaulted the first victim at the urging of his friends who were in their twenties and that while he knew what he was doing was wrong, he wanted to fit in.

With respect to the assault of the second victim, Zuber said he and his

friends were joyriding in two stolen cars when his friends stopped and forced her inside the car. Zuber said he was in a different car and did not assault her. His friends implicated him because they believed he would receive a lesser sentence as a juvenile. According to Dr. Frank: "He expressed what appeared to be sincere remorse" for his behavior.

Zuber admitted to Dr. Frank to having a "volatile temper when he was younger" but said that he had learned to control it. He also admitted to "hanging with the wrong crowd" and committing crimes when he was younger, although he downplayed the seriousness of his crimes to some extent, saying: "I was robbing bikes and skateboards," "[n]othing real hard." Thinking about the crimes he had committed, he said: "Looking back at that kid now, I would lock that kid up . . . I'm a completely different person now. It was just horrible. The way I live my life now is totally different. Now, I'm doing everything the right way."

Dr. Frank noted that Zuber had "dedicated himself to helping younger prison inmates adapt successfully to their imprisonment and said he tries to guide them toward living a more prosocial, productive life." Zuber hoped to continue his work with youth upon release.

Zuber described himself as "very easygoing," "very meek and

unassertive," with "difficulty standing up for himself." The aspect of his life for which he was most guilty was "[w]hat happen[ed] in the past when [he] was a kid." On a test evaluating his "interest in and motivation for treatment" he scored "somewhat below average compared to adults in the general population" and "substantially lower than is typical of people in therapy."

Zuber showed low interpretive cognitive ability on a psychological test. On a test that did not require reading, he scored in the average range. His estimated IQ was "at the 26th percentile." He showed no signs of psychosis or neurological impairment, and "[h]e denied any current interest in forced sexual practices" and did not provide "bizarre or irrational responses on the Sexuality Questionnaire."

To aid in assessing Zuber's risk of committing another sex offense, Dr. Frank administered the Static-99R, which "is an actuarial tool with moderate accuracy in ranking offenders according to their relative risk for sexual recidivism, without regard to factors such as type or severity of sexual offense." Assuming that Zuber would be released at his current age, Zuber fell within the above average risk category. However, Dr. Frank wrote "that the rate, confidence interval and nominal category apply to the group and not to Mr. Zuber, in particular. The degree to which the routine sample is congruent with

14

characteristics of New Jersey offenders or adolescent offenders is unclear."

Further, the test result had to be "interpreted with caution" because according to the Static-99R Coding Rules Manual, the instrument's ability to predict recidivism rates for juvenile offenders was unclear. The Manual instructed:

> There is a very real theoretical question about whether juvenile sex offending is the same phenomena as adult sex offending in terms of its underlying dynamics and our ability to effect change in the individual, with research increasingly concluding that adults and adolescents who commit sex offenses are meaningfully different . . . In general, the research literature leads us to believe that adolescents who commit sex offenses are not necessarily younger versions of adult sex offenders. In comparison to adult sex offenses, the sex offenses committed by juveniles are more likely to involve peers as co-offenders, lack planning, and lack indicators of deviant sexual interests. Developmental, family and social factors would be expected to impact on recidivism potential. We have reason to believe that people who commit sex offenses only as children/young people are a different profile than adults who commit sex offenses. In cases such as these, we recommend that Static-99R score be used with caution and only as part of a more wide-ranging assessment of sexual and criminal behavior.

Dr. Frank concluded that

> there was no evidence to be able to conclude that Mr. Zuber felt irresistibly compelled to commit the sex offenses for which he is incarcerated. His offense behavior appears to have resulted from a number of

15

factors including immaturity, poor judgment, negative peer influence, low self-esteem and an antisocial personality orientation.

Given the absence of a clear finding of compulsive sexual behavior, Mr. Zuber is not eligible for sentencing under the purview of the New Jersey Sex Offender Act.

On two dates in July 2018, Dr. Kristi Corcoran, Psy.D., interviewed Zuber for a sexually violent predator risk assessment. Again, he denied sexually assaulting the second victim but admitted to assaulting the first victim. He said that he and his friends were driving in a car when they saw the first victim's car at the side of the road. His friend stopped to help her but then "all good intentions went crooked . . . things got out of hand . . . went downhill." His co-defendants said they were going to rob her "and then things went totally sideways." His friends pressured him to sexually assault her, telling him that he could not "be with us" if he refused. He denied being sexually aroused by the assault, expressed remorse for his actions and said, "the whole thing was just terrible . . . disgusted with the whole thing." He said that after his grandmother died twenty-seven years ago, he decided "I need to get my life together" and "take responsibility for everything I did." He said he was "truly sorry" for his actions.

Dr. Corcoran wrote that, according to the probation department, Zuber's

juvenile record was "one of if not the most extensive juvenile records in the Essex County history." His record began at age ten with a truancy charge and escalated to thirty-eight delinquency complaints between the time he was fifteen and seventeen, which included burglary and robbery charges. He did not comply with probation and escaped from a juvenile detention facility. The "overwhelming majority of victims" were women.

According to Dr. Corcoran, Zuber minimized his criminal behavior, explaining that everyone he associated with was older and he usually served as the look-out or driver of the get-away car because he "was too little." He denied escaping from the youth detention facility, saying that the facility was more like a campus and he simply walked away. He also denied that most of his victims were women.

Zuber denied to Dr. Corcoran that he had any deviant sexual interests or fantasies. Besides the first victim, he reported having sexual relations with three girls around his age when he was a teenager.

Dr. Corcoran also administered the Static-99R instrument to assess Zuber's risk of reoffending. Like Dr. Frank, Dr. Corcoran underscored that the results should be "interpreted with caution" because "[j]uvenile offenders are meaningfully different than adult sex offenders and the danger in using Static-

99R is that it may be over-estimating their risk of re-offense." Zuber again scored in the above average category for risk of reoffending.

Dr. Corcoran noted that while in prison, Zuber had incurred no major infractions, and he completed a number of programs aimed at changing negative behavior and obtaining skills. He also consistently maintained a sanitation job and supervised a crew of men.

Dr. Corcoran concluded that Zuber's minimization of his juvenile criminal conduct "may suggest the presence of ongoing antisocial attitudes," which is a risk factor for "general criminality and is also associated with sexual recidivism in related research." But Dr. Corcoran did not believe that Zuber was a sexually violent predator who required treatment prior to reentering society. She suggested that parole supervision would likely be beneficial upon release.

In the first letter that Zuber submitted to the trial court for consideration in the second resentencing, he explained how prison had taught him responsibility and remorse. He discussed the sanitation job that he acquired soon after his incarceration, which developed into a supervisory position that required him to "lead a crew of five men." He also discussed two programs he was taking to aid in his decision-making process entitled "Thinking for a Change" and "Cage Your Rage." He expressed a desire to positively influence

young inmates and showed remorse and understanding for his actions.

In his second letter, Zuber wrote that he had a "full understanding" of his actions, held himself accountable for them and wished to apologize to his "victims" and his family.  He wrote:

> Everyday for the past thirty years of my life there has come a point within the day when I couldn't distract myself with anything that went on behind these walls and I found myself alone to face my thoughts.  When I closed my eyes I was that young reckless child again. I've asked him time and time again why, but he has no answer for me.  I would tell him that you were raised by women and the things that you did were wrong and that's why your mother, aunts and other family members don't come see you now, they are ashamed of you and rightfully so.  Sometimes I thought that if I stayed awake or didn't lock inn [sic] that I wouldn't have to face him again or have those conversations with him but then I realized that I couldn't hide and that this child will always be a part of me and he needed to be healed, I needed to be healed.   It was these conversations that have helped me to move forward and see that I was a confused, angry, and most importantly hurt child.  As a man I know that my pain doesn't give me the right to project my feelings onto others.  I say this with the full understanding of the pain that I caused all of my victims.  If I see the things I see and feel the way I feel when I close my eyes there is no doubt in my mind that my victims have gone through worse.  I don't know if apologizing could ever help but I am sorry for my actions. . . .  [A]s a man I am still held accountable for those actions and after thirty years of confinement I feel that I am ready to re-enter society but I [k]now that because of my actions I gave up [the] right to make that determination.

19

With respect to <u>Miller</u> factor one (lack of maturity and ability to appreciate risks), defense counsel urged the court to find that at age seventeen Zuber failed to appreciate the nature and consequences of his actions. Counsel quoted from a January 6, 1984 Avenel report submitted shortly after his convictions (not included in the record on appeal) that said Zuber "does not learn from experience. He has no sense of perspective, and lives almost exclusively in the present."

On <u>Miller</u> factors two and three (family and home environment and extent of Zuber's participation in the crime and the way familial and peer pressures may have influenced him), counsel said that Zuber was born to a fourteen-year-old mother, and he never knew his father. His mother had two children with another man who was a long-distance truck driver and "was never around." She was rarely home because she worked long hours and attended nursing school. Zuber was forced to raise his younger brothers, and no one raised him.

By age ten, Zuber was involved in the juvenile justice system for truancy. By either the ninth or tenth grade Zuber dropped out of school and was committing crimes in the middle of the night. He claimed that he was influenced by older boys, and with respect to the sexual assaults in this case, counsel underscored that one of the co-defendants was eighteen years old. Counsel

noted that this co-defendant and another co-defendant had already completed their sentences.

On Miller factor four (ability to deal with police and attorneys) counsel questioned why Zuber did not enter a plea agreement with the State, particularly since the evidence against him was overwhelming and included testimony from co-defendants. Counsel also questioned the propriety of the verdict that the jury had reached after only fifteen minutes of deliberation, and which had formed the basis for trial counsel's motion for a new trial. He underscored that Zuber did not appeal that decision or either of his convictions and urged the court to find that these circumstances showed that Zuber did not appreciate the nature of the charges and evidence against him and was unable to effectively aid in his defense.

On the final Miller factor (possibility of rehabilitation), counsel claimed that Zuber had matured into a "calm" and "responsible" fifty-four-year-old man "with an understanding of the harm" he had caused. Counsel argued that both were reflected in two letters that Zuber had submitted to the court expressing remorse and concern for his victims and their families and discussing the internal process he had gone through to understand why he had committed such horrible crimes as a child.

21

Counsel stressed that Zuber never had a drug or alcohol problem and was not under the influence of either at the time of the crimes. He also did not suffer from any mental problems and he was not a compulsive and repetitive sex offender and did not pose a threat to society.

Zuber's prison record was described by his counsel as "excellent." He worked at various locations as a supervisor in the sanitation unit, and he completed courses to better himself and prepare for release. In the last eleven-and-one-half years he had no infractions, and the few that he had prior to that were for minor offenses like possession of a water bottle, hair clippers, zip ties and a Walkman radio.

With respect to Zuber's plans upon release, counsel said that Zuber had strong family support and that his brother had agreed to give him a place to live, and his nephew had agreed to give him a job. Counsel requested the court impose a sentence that would allow for Zuber's immediate release or release in the near future.

The State asserted that while Zuber showed remorse for his actions, he continued to deny that he had sexually assaulted the second victim. It disputed defense counsel's claim that at age seventeen Zuber did not appreciate the consequences of his actions, underscoring his extensive history with the juvenile

22

justice system. The State noted that when Zuber committed these crimes, he was an escapee from a juvenile detention facility. The State also disputed Zuber's claim that he was influenced by others because the evidence overwhelmingly showed that Zuber was the "ringleader" of these crimes and the first to sexually assault both victims.

The State conceded that Zuber's prison record was "excellent" and that his prospects for successful adjustment after release were good.

The State urged the trial court to find that concurrent terms were not appropriate because the crimes involved two separate victims of kidnapping and gang rape. It suggested decreasing the length of the sentences to give Zuber the benefit of the mitigating youth factors, while also ensuring that Zuber remains in prison for additional years to protect society.

Zuber addressed the trial court at the remand hearing, apologizing to the victims and their families. He said that he could not explain why he had committed the crimes but claimed that he was a changed man. He said: "There is no excuse for what I did, so I offer none because it would only be disrespectful and self-serving. I hope that life has somehow restored to them, that which I robbed [of] them." He said that as a child, he did not understand what love was, and he lacked self-worth. He now understood that he had taken from his victims

23

"exactly what was missing in myself. I took their ability to trust in others, which I now understand to be crucial to a happy life." He said he was "fully aware and remorseful" of his actions.

With respect to Zuber's family, his brother Maurice requested leniency for Zuber in resentencing, explaining that Zuber was a changed man. He also said that upon release Zuber would live with him and his family. Zuber's cousin Quesean Williams also asserted that Zuber had changed, and he promised to employ Zuber at his trucking company upon release. Zuber's aunt said that when Zuber was a teenager, his mother tried to get him the help he needed, but the family court did not help her.

Benjamin from the New Jersey Parents Caucus/Juvenile Justice Initiative said that Zuber had been working with the organization for the past three-to-four years and that he was "an outstanding member" of the caucus. He was "committed to improving the lives of those involved with the juvenile justice system." She said he "has proven that he is committed to bettering his life and is taking legitimate steps towards rehabilitation." He "has not just wanted what is best for himself, but he has encouraged those around him to seek out [the] organization so they [have] a chance to receive the support and strength to improve their situation."

A-2677-18T2

The judge reserved decision but did observe that, based on Zuber's prison record and sex-offender evaluations, he "does not fall within that slim class of juvenile defendant[s] that cannot be rehabilitated."

D.

On January 14, 2019, the trial court held another hearing where it placed some findings on the record and imposed sentence. It later supplemented those findings with its written decision.

The court began by saying that "this has to be the most difficult case [the court has] ever had, because on one hand" the crimes Zuber committed were "almost war crimes," but on the other hand Zuber "is not the same person that he was at age seventeen."

With respect to the Miller factors, the court gave little weight to factor one (the juvenile's lack of maturity and undeveloped sense of responsibility leading to reckless behavior) based on Zuber's extensive juvenile record, which included "six adjudications for offenses that escalate[d] in severity over time," and the fact that he was an escapee when he committed the two sexual assaults in this case. Further, Zuber "seemed to have been the leader or instigator of both incidents," which, the court noted was different from the fourteen-year-old defendant in Miller, who "was swept up in a robbery he had never planned to be

a part of."  Unlike that juvenile, Zuber "had already had several adjudications for robberies and similar crimes and knew of the consequences."

In its written decision, the court added that while the status of being a juvenile mitigated punishment in many cases,

> [t]his court has a hard time believing, however, that immaturity or recklessness can be blamed for the abduction and sexual assault of a helpless female.  It is even less persuasive that these characteristics mitigate the defendant doing it again [a] little over a week later to a different victim in just as violent a fashion.  This court also cannot find that punishing this sort of crime with lengthy prison terms would not deter juveniles from this kind of depraved conduct simply because of their impetuous nature.

On Miller factor two (family and home environment and influence by others), the court recognized that Zuber's family situation did not include an adult to parent Zuber on a regular basis.  This appeared to be "the main reason why [Zuber] was in the streets and began committing crimes at such a young age." However, the court said that Zuber was not "abused or mistreated," and there was no evidence that he witnessed more violence as a child than any other child in a similar environment.  The court concluded in this regard:  "For the acts as reprehensible as [Zuber's], the mere subpar upbringing has a limited effect in the Court's decision."

The court added that while Zuber's "upbringing may very well mitigate

26

many of the robberies and other crimes he committed, . . . it is extremely difficult to assess how much of a factor a less-than-ideal upbringing can be when we are dealing with the horrific crimes that Mr. Zuber committed. For acts as reprehensible as Mr. Zuber's, a merely subpar upbringing has a limited mitigating effect."

With respect to Miller factor three (extent of Zuber's participation in the crime and the way familial and peer pressures may have influenced him), the court found that Zuber was "either the instigator or leader or both" and "was heavily involved" in these crimes. Thus, this factor had "limited" applicability. In its written decision, the court said this factor had "no mitigating effect."

With respect to Miller factor four (inability to deal with police officers, prosecutors, and his own counsel) the court underscored that Zuber "was no stranger to the juvenile criminal justice system." The court said that it was unclear why Zuber chose to go to trial when his co-defendants had agreed to testify against him. It was also unclear whether the State had offered him a plea agreement. Because the court did not know the answer to those questions, it said that it would give Zuber the benefit of the doubt and conclude that Zuber may have accepted a plea offer if he had been more mature.

Finally, on Miller factor five (possibility of rehabilitation), the court found

that Zuber had demonstrated rehabilitation. In the thirty-five years that he had been incarcerated, he had incurred only a few minor infractions, the last of which was a 2007 infraction for possession of a water bottle. He held multiple jobs in prison that required leadership skills and responsibility. He also completed programs aimed at preparing inmates to rejoin society. Indeed, the State conceded that his prison record was "excellent." Zuber also acknowledged his guilt and apologized to both victims. Upon release, he had a plan to live with his brother and work for his cousin.

The court noted that in Zuber's initial sex offender evaluations which occurred in 1983 and 1984 (neither of which is in the record on appeal), Zuber maintained his innocence. However, at his second resentencing hearing he accepted responsibility for his actions and apologized to all victims.

As the court also noted in relation to the May 2018 evaluation, Dr. Frank explained that Zuber's crimes appeared to "have resulted from a number of factors including immaturity, poor judgment, negative peer influence, low self-esteem and an anti-social personality orientation" and that he was not eligible for sentencing under the New Jersey Sex Offender Act. Dr. Corcoran similarly concluded that Zuber showed no signs of deviant sexual interest or arousal, which suggested a low risk for reoffending.

In summarizing the Miller factors as applied to Zuber, the court wrote:

> It is clear that Mr. Zuber is not the violent and troubled young [man] that he once was almost 38 years ago. The Court stated in Roper that it is difficult even for experts to look at a juvenile's crimes and decide that the juvenile is irreparably corrupted, as opposed to the crimes being a product of the transient immaturity that accompanies youth. Mr. Zuber is an example of this difficulty. He had a troubled childhood in which he acquired dozens of juvenile complaints. He committed two abhorrent crimes - the facts of which being heinous and shocking enough to outweigh most mitigating factors and put him in prison for the last 35-plus years. And yet, he stands before us a seemingly matured and rehabilitated man. Mr. Zuber has demonstrated that he is likely fit to rejoin society.

> [emphasis added.]

With respect to the Yarbough guidelines,[2] the court found that they weighed in favor of consecutive terms. On the first guideline (whether the crimes and their objectives were independent), the court said: "These were two separate aggravated sexual assaults, gang sexual assaults, separated by one week." But in the written decision, the court said that the sentence for the sexual assault of the second victim should run concurrently with the kidnapping conviction because the kidnapping was not independent of the sexual assault. The court did not believe this to be the case for the sexual assault of the first

---

[2] Yarbough, 100 N.J. at 643-44.

victim because that kidnapping and rape occurred at different times, in different locations and with different objectives. The court believed it could "be assumed from the facts that the decision to abduct [the first victim] was a spontaneous, impetuous decision," but in the second attack, "[i]t is likely that the objective of [the] kidnapping was to commit another sexual assault." With respect to Yarbough guidelines two through five (whether the crimes involved separate acts of violence at different times against different victims and whether the convictions were numerous), the court found that Zuber had committed two acts of violence against two victims at two different times and that the convictions were numerous. The fact that the crimes involved two victims weighed heavily in favor of consecutive terms.

With respect to the aggravating and mitigating sentencing factors, the court noted that at the initial sentencing no mitigating factors existed, and aggravating factors one (nature and circumstances of the offense), two (seriousness of harm to the victim), three (risk defendant will reoffend), six (extent of defendant's prior record) and nine (need to deter) were found. Based on the current circumstances, the court found that aggravating factors one, two, six and nine still applied, that aggravating factor three no longer applied and mitigating factor nine (defendant is unlikely to reoffend) was now applicable.

In conclusion, the court said that although <u>Miller</u> factors one through four did not weigh in Zuber's favor, factor five "significantly" weighed in his favor. To account for that factor, the court (1) reduced the sentence on the second-degree robbery of the first victim from ten years with a five-year parole bar to six years with a three-year parole bar, and (2) changed the consecutive term for the aggravated sexual assault of the second victim by vaginal penetration to a concurrent term.

## II.

## A.

On this appeal, Zuber argues his resentence is unsupported by a rationale that clearly explains the court's basis for imposing maximum terms on nearly all convictions, fifty-percent parole bars on all sentences except the weapons offense, and five consecutive terms, for an aggregate sentence of 86 years of imprisonment with 43 years of parole ineligibility.

Zuber argues that, in imposing five consecutive terms, the court failed to apply the required "heightened" <u>Yarbough</u> standard prescribed by the Supreme Court. He contends that, in light of his rehabilitative efforts and the court's finding that he was not incorrigible, he should be released from prison now, or, at the very least, after a prompt parole hearing.

Zuber concedes that two of the consecutive terms were appropriate because he committed two sexual assaults against two victims at different times, but disputes that the remaining three consecutive terms were appropriate. Indeed, he asserts that the robberies "were something of an afterthought," and notes that the court did not even mention those crimes in orally imposing the revised sentence.

## B.

As a general matter apart from constitutional mandates, a sentence should only be disturbed when the trial court failed to follow sentencing guidelines, when the aggravating and mitigating factors are not supported by the evidence, or when the facts and law show "such a clear error of judgment that it shocks the judicial conscience." State v. Roth, 95 N.J. 334, 364 (1984). Accord State v. Case, 220 N.J. 49, 65 (2014). In weighing the aggravating and mitigating factors, the court must conduct a qualitative, not quantitative, analysis and provide a "clear explanation" of how it weighed the factors and applied them to the sentencing range. State v. Fuentes, 217 N.J. 57, 73 (2014). The court may not "double count" a fact that established an element of the offense as a basis to support an aggravating or mitigating factor. Id. at 74-75. However, the court may consider conduct in excess of that required to commit the crime without

32

offending the rule against double counting.  Id. at 75.  "[I]f the trial court fails to identify relevant aggravating and mitigating factors, or merely enumerates them, or forgoes a qualitative analysis, or provides little 'insight into the sentencing decision,' then the deferential standard will not apply."  Case, 220 N.J. at 65 (quoting State v. Kruse, 105 N.J. 354, 363 (1987)).

In considering the sentencing factors, "a defendant should be assessed as he stands before the court on the day of sentencing."  State v. Jaffe, 220 N.J. 114, 116 (2014).  In the context of a remand, unless the reviewing court limited the resentencing procedure, the sentencing court must consider the defendant's post-offense conduct, including any conduct that occurred after the initial sentence began.  State v. Randolph, 210 N.J. 330, 354 (2012).  "The State, likewise, is not limited in its presentation.  The only restriction placed on both parties is that the evidence presented be competent and relevant."  Case, 220 N.J. at 70.

Where the aggravating factors preponderate, the term should be at the high end of the sentencing range, and where the mitigating factors preponderate, the sentence should be at the low end of the range.  Fuentes, 217 N.J. at 73.  N.J.S.A. 2C:43-6(b) permits the court to impose a discretionary parole bar not to exceed one-half of the sentence imposed if the court is "clearly convinced that the

aggravating factors substantially outweigh the mitigating factors."[3]  Pursuant to N.J.S.A. 2C:44-1(f)(1), the court must "specifically place on the record the aggravating factors . . . which justify the imposition of a minimum term." Discretionary parole bars are the exception and should not be routinely imposed. Case, 220 N.J. at 66.

Having considered these principles and the constitutional factors mandated by the Supreme Courts of the United States and this State, we conclude the trial court generally adhered to the law in resentencing Zuber, with one significant exception.  That exception concerns the continued imposition of consecutive sentences for the two robbery counts, one of which is quite lengthy.

More specifically, we affirm the trial court's rejection of Zuber's request for immediate release based upon the finding of rehabilitation as to Miller factor five.  Nothing in the United States Supreme Court's opinion in Miller or its related opinions instructs that this fifth factor is all-encompassing and dispositive.  Nor did our own State Supreme Court make such a proclamation.

---

[3] Except for the third-degree weapons offense, all of the crimes for which Zuber was convicted are now No Early Release Act ("NERA") crimes, subject to a mandatory eighty-five percent parole bar.  But Zuber is not subject to NERA because that statute was not enacted until 1997, long after Zuber's crimes occurred.  L. 1997, c. 112.  Because NERA would impose a harsher sentence than the one Zuber faced at the time of his crimes, the Ex Post Facto Clause prohibits its application to Zuber.

To be sure, what the trial court described as the juvenile offender's "likely" capacity for rehabilitation is of great importance. But that cannot nullify the significance of the other four Miller factors, the first three of which Zuber does not even challenge. We also agree with the trial court that the evidence on factor four (the alleged "incompetencies of youth") weighs in the State's favor, not the defense.

That said, we do not minimize Zuber's admirable track record in improving his behavior during his many decades in prison, and in largely, if not fully, coming around to acknowledge his very serious wrongdoing. The trial court rightly took those positive developments into account by considerably reducing the aggregate parole ineligibility period by a dozen years from 55 years to 43 years.

However, we are not persuaded that the trial court sufficiently carried out the Supreme Court's mandate to apply "heightened" care with respect to the continued imposition of certain consecutive aspects to the sentences, particularly as to the two robbery counts.

Under state law, a sentencing court must consider the following guidelines in deciding whether to run sentences consecutively or concurrently:

> (1) there can be no free crimes in a system for which
> the punishment shall fit the crime;

(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

(a) the crimes and their objectives were predominantly independent of each other;

(b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4)    there should be no double counting of aggravating factors;

(5)    successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and

(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses.

[Yarbough, 100 N.J. at 643-44.]

A-2677-18T2

Yarbough guideline number six has been superseded by a 1993 amendment to N.J.S.A. 2C:44-5(a), which provides that there "shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses."

The sentencing court should qualitatively, not quantitatively, weigh the factors set forth in Yarbough guideline three. Carey, 168 N.J. at 427. The court must separately state the reasons for each consecutive term. State v. Miller, 108 N.J. 112, 122 (1987); Yarbough, 100 N.J. at 643-44. A court may impose consecutive sentences even if "a majority of the Yarbough factors support concurrent sentences." Carey, 168 N.J. at 427-28.

Zuber directs sentencing courts to "exercise a heightened level of care before imposing multiple consecutive sentences on juveniles." 227 N.J. at 450. While the Zuber Court did not discuss in detail what it meant by this, it couched the statement in terms of the "concerns that Graham and Miller highlight" and the "overriding importance of" the Miller decision. Ibid. We agree with Zuber that the trial court did not demonstrably apply the Yarbough guidelines with such a heightened level of care to its decision to continue to impose five consecutive terms, and particularly as to the two robbery counts.

As our State Supreme Court explained years ago in a different Miller case,

> factors relied on to sentence a defendant to the maximum term for each offense should not be used

again to justify imposing those sentences consecutively. Where the offenses are closely related, it would ordinarily be inappropriate to sentence a defendant to the maximum term for each offense and also require that those sentences be served consecutively, especially where the second offense did not pose an additional risk to the victim. The focus should be on the fairness of the overall sentence, and the sentencing court should set forth in detail its reasons for concluding that a particular sentence is warranted.

[108 N.J. at 122.]

Here, the trial court relied on the same aggravating and mitigating factors to justify consecutive terms as it relied on to impose maximum and near maximum terms with maximum parole bars.

With respect to the crimes against the first victim, the court imposed consecutive terms for the kidnapping, second-degree robbery, and sexual assault by vaginal penetration, explaining that the first kidnapping was a separate crime because "the sexual assault took place at a different location and later in time."

With respect to the crimes against the second victim, the court imposed consecutive terms for the kidnapping and first-degree robbery convictions and ran the sexual assault and weapons sentences concurrently with those terms. The court specifically found that "it is likely that the objective of [the second] kidnapping was to commit another sexual assault," leading to a conclusion that

"the [second] kidnapping and sexual assault crimes were one continuous act."[4]

The trial court did not show that it exercised "heightened care" in maintaining consecutive sentences and consecutive parole ineligibility periods for the two robberies. The only portion of relevant written amplification is a sentence at the end of the paragraph discussing the December 1981 second indictment, after explaining why the second kidnapping and the second sexual assault were "one continuous act." The sentence reads: "I do not find this [continuity] for the robbery as well, however, as the monetary gain is a distinct objective and involved its own threats of violence." It is unclear whether this sentence was intended to pertain to the first robbery in November 1981 as well. The court also did not explain why it felt the Miller youth factors warranted a reduction of Zuber's sentence for only the first robbery from ten to six years, while leaving the twenty-year sentence on his second robbery intact.

With all due respect to the judge who undertook this understandably difficult responsibility on remand, we are not satisfied that this discussion

---

[4] On remand, a trial court may change a concurrent term to a consecutive term without violating double jeopardy protections so long as the aggregate sentence does not exceed the current aggregate sentence. State v. Kosch, 458 N.J. Super. 344, 351-52 (App. Div.), certif. denied, 240 N.J. 20 (2019). Thus, the court was authorized to change the sexual assault sentence as to the second victim to run consecutively to the sexual assault sentence as to the first victim, as Zuber concedes would be justified.

suffices to fulfill the Supreme Court's mandate for heightened care. We recognize that, under a traditional <u>Yarbough</u> analysis not involving a juvenile tried as an adult, it may be sufficient for a sentencing judge to state that a robbery has a "distinct objective" and involved distinct "threats of violence" from other crimes the youth committed that same day. But this special constitutional context also requires the court to consider the real-time confinement impacts of stacking these robbery sentences in such a fashion upon a juvenile offender already sentenced to decades of imprisonment on other counts.

Surely the most serious offenses here are the first-degree sexual offenses and the kidnappings. They involved horrendous crimes committed against the person. By comparison, the robberies were hastily committed after the kidnappings and assaults. The robberies arguably did not place the victims in substantially more danger than the initial violent and brutal crimes. The trial court's sentencing analysis does not adequately elaborate upon those characteristics with the "heightened" care mandated by the Supreme Court.

Under the revised sentences imposed by the trial court, the consecutive terms for the two robberies result in an additional three years of parole ineligibility on the first indictment, and another ten-year parole disqualifier on the second indictment. Although we do not resolve the propriety of those

additional thirteen years of parole ineligibility here, it is necessary to remand the matter for a third resentencing to justify, with "heightened" care, those real-time consequences.

Zuber's looming eligibility for release five years from now does not make a remand for this limited purpose an inconsequential exercise. If, hypothetically, the robbery sentences were either made concurrent to other additional offenses, or left consecutive but reduced in length, Zuber could potentially be eligible for a parole hearing before his current projected date in 2025. Again, we do not forecast what outcome on remand will be constitutionally satisfactory and instead leave that to the trial court's careful "heightened" reassessment.

All of Zuber's remaining arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2677-18T2